355 So.2d 809 (1977)
Robert SUSSMAN, Appellant,
v.
Vincent DAMIAN, Jr., Appellee.
No. 76-936.
District Court of Appeal of Florida, Third District.
December 27, 1977.
*810 Robert M. Sussman and Thomas P. Bell, Hialeah, for appellant.
Williams, Salomon, Kanner & Damian and Gary S. Brooks, Miami, for appellee.
Before HAVERFIELD, NATHAN and HUBBART, JJ.
HUBBART, Judge.
This is an action and counterclaim for slander in which the trial court dismissed both claims upon the entry of two adverse summary judgments. Both parties appeal.
The issue presented for review is whether an attorney has an absolute privilege in an action for defamation to utter defamatory statements during the taking of a deposition or during a conversation with opposing counsel in connection with a pending lawsuit in which the attorney represents one of the parties involved. We hold that the attorney has such an absolute privilege during the said deposition or conversation with counsel so long as the statements uttered are relevant to the subject of the lawsuit. If not so relevant, the attorney has a prima facie qualified privilege to utter such defamatory statements which may be overcome only by evidence tending to show that the statements were made with express malice. We conclude that both privileges have been established in this case as a matter of law and affirm.
The facts herein are substantially undisputed. The plaintiff Robert Sussman and the defendant Vincent Damian are members of the Florida Bar practicing law in Miami, Florida. They each represented adverse parties in a civil action pending before the Circuit Court for the Eleventh Judicial Circuit of Florida. Damian noticed for deposition Sussman's client in connection with the pending civil action. Present at the deposition in Damian's office were Sussman and his client, counsel for another party in the lawsuit and his client, and a court reporter. Sussman and Damian became embroiled in a heated controversy during the deposition as to whether Sussman's client had produced certain documents pertinent to the case for Damian's inspection. Damian insisted that the documents had not been so produced. Whereupon Sussman replied, "You sir, are a damned liar. I gave you everything." The deposition was thereupon terminated.
The defendant Damian subsequently filed a motion for an order compelling the discovery of the documents allegedly not produced at deposition and for sanctions against Sussman for his behavior during the deposition. The motion came on for hearing before the trial court in the judge's chambers. The record does not reflect the exact ruling of the court on this motion, but apparently the court did order the two lawyers to behave themselves thereafter in a professional manner.
After the hearing was concluded, Sussman and Damian carried on a conversation in the court's chambers, in the hallway outside the court's offices near the courthouse elevators, and on an elevator descending to the ground floor of the courthouse. Another lawyer and an unknown person were present during the conversation in the elevator. There is some dispute over exactly what was said during this conversation, but it clearly involved the prior court hearing on the pending lawsuit. The conversation eventually became quite heated until the defendant Damian exploded in the elevator with a strong personal attack on Sussman's *811 professional integrity accusing Sussman of improprieties in the handling of client monies and trust funds unrelated to the subject matter of the lawsuit which up to that point was being discussed during their conversation and expressing a desire to see Sussman disbarred.
Sussman filed a complaint against Damian for slander based on the elevator incident; Damian counterclaimed for slander based on the deposition incident. The trial court entered adverse summary judgments as to both claims. This appeal follows.
It is the established law of this state that defamatory words published by lawyers during the due course of a judicial procedure are absolutely privileged and cannot form the basis for a defamation action so long as the statements uttered are connected with, or are relevant or material to the cause at hand or the subject of inquiry no matter how false or malicious such statements may in fact be. This privilege extends to the taking of a deposition or to conversations between opposing counsel in a pending civil action in which the attorney represents one of the parties involved. Taylor v. Alropa Corp., 138 Fla. 137, 189 So. 230 (1939); Ange v. State, 98 Fla. 538, 123 So. 916 (1929); Myers v. Hodges, 53 Fla. 197, 44 So. 357 (1907). See Romero v. Prince, 85 N.M. 474, 513 P.2d 717 (Ct.App. 1973); Prosser on Torts 777-78 (4th ed. 1971); 1 Harper and James, The Law of Torts 427 (1956); Restatement (Second) of Torts § 586 (1965).
If the defamatory statements published by lawyers in the due course of a judicial procedure are not relevant or pertinent to the subject of inquiry, such statements are conditionally or qualifiedly privileged  that is, prima facie privileged. The law does not presume that such statements are made with malice, and in order for the plaintiff to recover he must establish that the statements were uttered with express malice. Malice may be inferred from the language of the publication itself or may be proven by extrinsic circumstances, but malice can not be inferred from the mere fact that the statements are untrue or that the statements contain strong words, or that the expressions used are angry and intemperate. Taylor v. Alropa Corp., 138 Fla. 137, 189 So. 230 (Fla. 1939); Ange v. State, 98 Fla. 538, 123 So. 916 (1929); Myers v. Hodges, 53 Fla. 197, 44 So. 357 (1907).
The basis for such absolute or qualified privileges for lawyers is to permit a free adversarial atmosphere to flourish, which atmosphere is so essential to our system of justice. In fulfilling their obligations to their client and to the court, it is essential that lawyers, subject only to control by the trial court and the bar, should be free to act on their own best judgment in prosecuting or defending a lawsuit without fear of later having to defend a civil action for defamation for something said or written during the litigation. A contrary rule might very well deter counsel from saying or writing anything controversial for fear of antagonizing someone involved in the case and thus courting a lawsuit, a result which would seriously hamper the cause of justice. As such, the law has long looked with disfavor on such slander actions against lawyers uttered in the due course of judicial procedure except in the most extreme cases where the defamatory statement was totally irrelevant to the lawsuit and was uttered with deliberate and premeditated malice. 1 Harper and James, The Law of Torts, 427 (1956).
In the instant case, the plaintiff Sussman's statement made during the deposition herein, although intemperate and unprofessional, is absolutely privileged in an action for slander. The statement was uttered in a deposition taken in a pending civil action in which Sussman represented one of the parties involved. The statement was material and relevant to the lawsuit because it concerned whether Sussman's client had produced documents subject to discovery in the case. Damian insisted that Sussman's client had not so produced the discoverable documents which Sussman denied with a defamatory accusation. As such, the statement is absolutely privileged in an action for slander.
*812 As to Damian's statement made during his conversation with Sussman, it is clear that such statement is not absolutely privileged. Although it was uttered during an otherwise privileged conversation with opposing counsel in a pending lawsuit, the defamatory statement was in no sense relevant or material to the cause at hand. As such, it cannot come within the umbrella of an absolute privilege.
The statement, however, is qualifiedly privileged unless overcome by evidence of express malice, which evidence is completely lacking in this case. The extrinsic circumstances surrounding the utterance of the statement clearly show that it was made in a heated conversation between opposing counsel in a bitterly contested lawsuit in which both counsel were equally to blame for intemperate statements and conduct. Sussman had previously accused Damian of being a "damned liar", the lawyers had just left a court hearing where this matter was discussed, and tempers had not yet cooled in the aftermath of the hearing. In short, Damian's statement was as much prompted by Sussman's own inexcusable conduct as by anything else and must be viewed as a deplorable emotional outburst, not a statement uttered with deliberate and premeditated malice.
True, the statement contained strong defamatory words, used expressions which were both angry and intemperate, and asserted presumed untruths. Such a statement nonetheless is insufficient proof of express malice under the law of this state. Accordingly, Damian had a qualified privilege to utter the statement made, which privilege as a matter of law was not overcome by proof of express malice.
Nothing said in this opinion should in any way be interpreted as condoning the lawyers' respective statements in this case. Such statements were inexcusable, intemperate and unprofessional. We only hold that such statements cannot form the basis for a slander action.
The trial court properly entered a summary judgment against both slander claims made in this case. The judgment appealed from is affirmed in all respects.
Affirmed.