[No. 13039-1-I.  Division One.  January 27, 1986.]

VERN SIMS FORD, INC., ET AL, *Respondents,* v. FRED HAGEL, *Appellant.*

*Weinrich, Gilmore & Adolph, P.S., Robert J. Adolph,* and *Kevin Sullivan,* for appellant.

*Stiles & Stiles* and *William A. Stiles,* for respondents.

SWANSON, J.—Fred Hagel appeals the Superior Court judgment awarding damages for defamation to Vern Sims Ford, Inc., Bobby Martin, and Daniel F. Sims. Hagel claims that the damages award was error since his alleged defamatory statements were substantially true, were reasonably believed by him to be true, and were constitutionally protected opinions, and no proof of actual damages was shown.

In 1978 Daniel Sims was the manager of, and Martin was a salesman for, Vern Sims Ford, Inc., an automobile dealership in Skagit County, Washington. Hagel, a California resident, knew Martin through Hagel's son. In September 1978 Hagel contacted Martin from California regarding the purchase of a Ford van and subsequently went to Sedro

Woolley to negotiate the purchase of a van. After Martin and Hagel and his wife spent most of one day listing desired options and prices, a purchase agreement was signed. Dan Sims, the manager, and the Hagels orally agreed that the purchase price would be the dealer's cost plus a preparation fee of $197.50 and $800. This agreed price represented a substantial discount from the van's retail price. Several months later when the van arrived and the Hagels went to Sedro Woolley to pick it up, Hagel signed a new purchase agreement. After delivery of the van when it was discovered that Hagel had paid more than the oral agreement amount, he was sent a refund check for $183.30, which he cashed.

Shortly after taking delivery of the van, Hagel began calling the respondents on the telephone and accusing them of being thieves. He claimed that discrepancies existed between the amounts that he purportedly was charged and those that were shown on the van's window sticker for transportation, insulation, FDS, and swivel chairs. Even after he received the $183.30 refund, he asserted that he was still owed $70.24. Hagel filed complaints with the Washington State Attorney General's office and the Department of Licensing and contacted the Sedro Woolley newspaper, a Seattle television station and the CBS television network regarding the transaction. From about November 1980 through August 1981, Hagel mailed to approximately 100 persons and businesses in Skagit County a flyer regarding the transaction that had the heading, "Vern Sims Ford and Their Salesperson Bob Martin Are Thieves!!!" The mailing of the flyers finally ended when Hagel was contacted by the postal authorities after he sent to Vern Sims, owner of the automobile dealership, a letter stating that he would mail the flyer to everyone in Skagit County unless he was paid $7,500 for his purported expenses and a $50,000 contribution was made to Oral Roberts, the evangelist.

In the respondents' defamation action against Hagel, judgment was entered awarding damages of $7,500 to Vern

Sims Ford, Inc., $2,500 to Daniel Sims, and $5,000 to Bobby Martin. Hagel appeals the judgment and award of damages.

The only issues presented by this appeal are (1) whether the award of damages for defamation was proper and (2) whether terms should be assessed for a frivolous appeal.

Since a defamation suit is fundamentally a state cause of action, though with profound First Amendment implications, resolving a defamation claim requires inquiries under both state and federal law. The court must first determine whether the defendant has injured the plaintiff's reputation under the applicable state law; if so, the court must ascertain whether the First Amendment nevertheless prohibits the imposition of liability. *McDowell v. Paiewonsky,* 769 F.2d 942, 945 (3d Cir. 1985).

The plaintiff in a defamation action must prove four essential elements: (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages. *Mark v. Seattle Times,* 96 Wn.2d 473, 486, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982). If the plaintiff is a private individual, a negligence standard of fault applies. *Caruso v. Local 690, Int'l Bhd. of Teamsters,* 100 Wn.2d 343, 352, 670 P.2d 240 (1983). However, a plaintiff who is a public figure or public official must prove "actual malice"—that is, knowledge of falsity or reckless disregard of the truth or falsity of the allegedly defamatory statements. *Caruso* (citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974); *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964)).

The Court in *Gertz,* at 345, defined "public figures" generally as those who either "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes", or those who become public figures with respect to a particular public controversy because they have "thrust themselves to the forefront . . . in order to influence the resolution of the issues involved." To achieve this status, the plaintiff must be involved in a pub-

lic controversy before the defamatory statement is published. *Hutchinson v. Proxmire,* 443 U.S. 111, 134–35, 61 L. Ed. 2d 411, 99 S. Ct. 2675 (1979).

■ Hagel contends that under *Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 280 (3d Cir. 1980), the respondents as sellers that through advertising solicited the public's attention and sought to influence consumer choice should be held to be public figures required to prove Hagel's actual malice to succeed on their defamation claims. However, the court in *Golden Bear Distrib. Sys. of Tex., Inc. v. Chase Revel, Inc.,* 708 F.2d 944, 952 (5th Cir. 1983) held that the business plaintiff was not a public figure that had "thrust itself" into a public controversy merely by advertising its services because otherwise the mere fact of advertising would render all businesses public figures. The *Golden Bear* court distinguished *Steaks* as a case in which a preexisting public controversy was found in the numerous complaints to the defendant television station and consumer affairs bureau regarding false advertisements. In this case no evidence of a preexisting public controversy was presented; thus the respondents are not public figures but rather private individuals who needed to have proved mere negligence, not actual malice, to recover on their claims. *Caruso.*

Here the trial court expressly found fault and falsity but not an unprivileged communication or damages because it based its award of damages upon a finding of libel per se.

> A defamatory publication is libelous per se (actionable without proof of special damages) if it (1) exposes a living person to hatred, contempt, ridicule or obloquy, to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession or office.

*Caruso v. Local 690, Int'l Bhd. of Teamsters, supra* at 353. Washington case law prior to the Supreme Court decision in *Caruso,* at 353–54, was that where a defamation constituted libel per se, absent a defense, the defamed person was entitled to a substantial award without proving actual

damages. *See, e.g., Corbin v. Madison,* 12 Wn. App. 318, 327, 529 P.2d 1145 (1974), *review denied,* 85 Wn.2d 1005 (1975).

However, under *Caruso,* which was decided after entry of the trial court's judgment here and which relied upon *Gertz,* presumed damages under the libel per se doctrine are unconstitutional and proof of actual injury is required if the defendant did not have actual malice.[1] *See* Restatement (Second) of Torts § 569, comment *c,* at 183 (1977). Further, where the defamation stems from the defendant's negligence, not actual malice, the plaintiff's recovery is restricted to compensation for "actual injury." *Gertz,* 418 U.S. at 349; *Caruso,* at 354; Restatement (Second) of Torts § 621, comment *b,* at 320.

Because the plaintiffs were proceeding on the libel per se theory under which damages are presumed once the publication is shown to be libelous per se, the trial court made no finding here that the plaintiffs had proved actual damages. Under *Caruso,* at 354, the absence of a finding as to actual damages precludes an award of damages unless actual malice is found.

█ The trial court's finding regarding fault was that Hagel's actions in sending the subject flyers were "done clearly with disregard for truth of the statements contained therein and that said statements were false." The negligence standard is that the defendant knew or, in the exercise of reasonable care, should have known that the statement was false or would create a false impression in some material respect. *Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 445, 546 P.2d 81 (1976). Actual malice is

---

[1]The court in *Caruso v. Local 690, Int'l Bhd. of Teamsters,* 100 Wn.2d 343, 353, 670 P.2d 240 (1983) found error in a jury instruction which stated in part, "If a matter is libelous per se the law presumes that plaintiff is damaged."

Prior to its decision in *Caruso,* our Supreme Court, citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974), stated, although not within a libel per se context, that damages may not be presumed in a defamation action absent a finding of actual malice. *See Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 447, 546 P.2d 81 (1976).

knowledge of the falsity or reckless disregard of the truth or falsity of the statement. *Caruso.* The trial court's finding here is thus one of actual malice. Since no error has been assigned to the trial court's findings of fact, they are deemed to be established facts of the case on appeal.[2] *Washington State Bar Ass'n v. Great Western Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 53, 586 P.2d 870 (1978).

After *Gertz* was decided, the Washington Supreme Court expressly stated that "damages may be *presumed* upon a finding of 'actual malice . . .'" *Taskett,* at 447. Thus Washington law permits the award of presumed damages once actual malice is shown. The question is whether the First Amendment prohibits such an award of presumed damages.

The *Gertz* Court held that

> the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.

418 U.S. at 349, *quoted in Caruso.* While *Gertz* held that presumed damages were available under some circumstances, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* ___ U.S. ___, 86 L. Ed. 2d 593, 105 S. Ct. 2939, 2947 n.7 (1985) (plurality opinion), *Gertz* left unanswered whether the First Amendment imposes any limits on recovery where actual malice is proved, *Agriss v. Roadway Express, Inc.,* 334 Pa. Super. 295, 483 A.2d 456, 468 n.5 (1984); *see* Restatement (Second) of Torts § 621, comment *c,* at 321

---

[2] Actual malice ordinarily may be inferred from objective facts, and evidence of negligence, motive and intent, by cumulation and appropriate inferences, may establish the defendant's recklessness or knowledge of falsity. Further, the defendant's mere statement of his belief in the publication's truth must be weighed against evidence adduced that supports a finding of knowing falsity or recklessness. *See, e.g., Rye v. Seattle Times Co.,* 37 Wn. App. 45, 53–56, 678 P.2d 1282, *review denied,* 102 Wn.2d 1004, *cert. denied,* 105 S. Ct. 593 (1984); *Tavoulareas v. Piro,* 759 F.2d 90, 114 (D.C. Cir. 1985); *Reader's Digest Ass'n v. Superior Court,* 37 Cal. 3d 244, 690 P.2d 610, 208 Cal. Rptr. 137, 144–46 (1984), *petition for cert. filed,* 53 U.S.L.W. 3619 (U.S. Feb. 14, 1985) (No. 84–1304). Without deciding, we note that under the case law, there is record evidence in the instant case that supports a finding of actual malice.

(1977).

Recently the United States Supreme Court held that a private individual's recovery of presumed and punitive damages for defamation on a lesser showing than actual malice does not violate the First Amendment when the defamatory statements do not involve matters of public concern.[3] *Dun & Bradstreet,* 105 S. Ct. at 2948. The decision rested upon the reduced constitutional value of speech involving no matters of public concern in contrast to the strong state interest in compensating private individuals for injury to their reputation since private persons have not voluntarily exposed themselves to increased risk of injury from defamatory statements and generally lack effective opportunities for rebutting such statements. 105 S. Ct. at 2944–46.

Since actual malice was shown in the instant case, the award of presumed damages did not violate the First Amendment under *Dun & Bradstreet* if the defamation did not involve a matter of public concern. We conclude that the defamatory statements here did not involve a matter of public concern. Whether speech addresses a matter of public concern must be determined by the expression's content, form and context as revealed by the entire record. *Connick v. Myers,* 461 U.S. 138, 147–48, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983). The *Connick* Court found, at page 154, that a questionnaire concerning office practices, policies and personnel disseminated by an assistant district attorney to other such attorneys in the same office touched upon matters of public concern in only a most limited sense and was most accurately characterized as an employee grievance concerning internal office policy. The Court distinguished between an employee speaking out as a citizen on a matter of general concern and an employee speaking out regarding

---

[3]The Court in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* __ U.S. __, 86 L. Ed. 2d 593, 105 S. Ct. 2939, 2941 (1985) (plurality opinion) limited the application of *Gertz* to a private individual's action for libel that involves a matter of public concern.

a personal employment dispute. *Connick,* at 148 n.8. Here while Hagel claims that his purpose in disseminating the flyers was to warn people that what happened to him could happen to them, the defamatory statements do not involve a matter of public concern but rather a private business dispute. The instant case thus falls within the ambit of *Dun & Bradstreet*'s ruling and the award of presumed damages did not violate the First Amendment.

An unprivileged communication is the other defamation element for which no express finding was entered because the respondents were proceeding upon a libel per se theory. However, no error was assigned to this omission, and no argument has been put forth that the communication was privileged. Appellate courts will only review a claimed error that is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto and is supported by argument and citations to legal authority. RAP 10.3(a)(5), 10.3(g); *Bender v. Seattle,* 99 Wn.2d 582, 599, 664 P.2d 492 (1983); *Lassila v. Wenatchee,* 89 Wn.2d 804, 809, 576 P.2d 54 (1978).

Hagel contends that his statements were opinions protected by the First Amendment. However, the trial court expressly found that Hagel's statements were false. Since opinions cannot be false, *Kutz v. Independent Pub'g Co.,* 97 N.M. 243, 638 P.2d 1088, 1089 (Ct. App. 1981), this finding is an implicit ruling that Hagel's statements were not protected opinions but rather false statements of fact which, under *Gertz,* at 340, have no constitutional value.

The record reveals no reason to disturb this implicit ruling, particularly since the finding of falsity was not challenged on appeal. The statements that the respondents were thieves, as accusations of criminal activity, are not constitutionally protected opinions.

> Accusations of criminal activity, *even in the form of opinion,* are not constitutionally protected. . . . As noted by the Supreme Court of California, there is a critical distinction between opinions which attribute improper motives to a public officer and accusations, *in*

*whatever form,* that an individual has committed a crime or is personally dishonest. No First Amendment protection enfolds false charges of criminal behavior. *Cianci v. New Times Pub'g Co.,* 639 F.2d 54, 63 (2d Cir. 1980) (adding italics) (quoting *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 382, 366 N.E.2d 1299, 397 N.Y.S.2d 943, 951, *cert. denied,* 434 U.S. 969 (1977)); *see Ollman v. Evans,* 750 F.2d 970, 980 (D.C. Cir. 1984), *cert. denied,* 105 S. Ct. 2662 (1985).

In light of changes in the law since the entry of judgment here, terms for a frivolous appeal should not be imposed.[4] The judgment is affirmed.

SCHOLFIELD, A.C.J., and COLEMAN, J., concur.

Review denied by Supreme Court March 21, 1986.

---

[4]We find without merit Hagel's contention that the trial court erred in failing to award him damages and attorney fees on his counterclaims for the respondents' alleged violation of the Consumer Protection Act, RCW 19.86, and infliction of emotional distress.