[No. 25739–1–I.   Division One.   September 4, 1990.]

CHRISTOPHER DEMOPOLIS, *Appellant*, v. PEOPLES NATIONAL BANK OF WASHINGTON, ET AL, *Respondents.*

*Dan Young* and *Bjorklund & Young,* for appellant.

*John R. Tomlinson, Michael B. King,* and *Lane Powell Moss & Miller,* for respondents.

WINSOR, J.—Christopher Demopolis appeals dismissal of his defamation and Consumer Protection Act (CPA) actions against Peoples National Bank of Washington (Peoples), Peoples' attorney, James Hermsen, and Hermsen's law firm, Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S. We affirm in part and reverse in part.

In 1983, Demopolis was involved in three Snohomish County actions involving different aspects of his late father's estate. Hermsen represented Peoples, who was an opposing party in all of the actions. One of Hermsen's trial strategies was to attack Demopolis' credibility.

After Hermsen conducted cross examination of Demopolis during one of the trials, the court recessed. Demopolis, his attorney and others went into the hall outside the courtroom. Hermsen approached and said that he was going to "nail" Demopolis for $150,000 in attorney fees. When Demopolis asked why, Hermsen allegedly said, "Because you have been convicted of perjury." It is undisputed that Demopolis has never been charged with, nor convicted of, perjury.

Demopolis filed an action for defamation and for violation of the CPA against Hermsen, Hermsen's law firm, and Hermsen's client, Peoples. At the close of Demopolis' case,

the trial court granted defendants' motion to dismiss, orally ruling that Hermsen's statement was absolutely privileged and, alternatively, that Demopolis failed to make a prima facie showing of damages. Demopolis sought direct review in the Supreme Court. That court declined review and transferred the case to this court. For the most part we address the issues presented, despite both parties' noncompliance with the Rules of Appellate Procedure governing assignments of error, and respondents' attempt to challenge trial court findings without perfecting a cross appeal.

We first address the parties' arguments relating to dismissal of Demopolis' defamation claims. A defamation plaintiff must prove four essential elements: (1) falsity, (2) an unprivileged communication, (3) fault,[1] and (4) damages. *E.g., LaMon v. Butler,* 112 Wn.2d 193, 197, 770 P.2d 1027, *cert. denied,* 110 S. Ct. 61 (1989); *Mark v. Seattle*

---

[1]The burden of proof on the element of fault depends on the nature of the defamed party. When the defamed party is a public figure or public official, he or she must establish actual malice. If, on the other hand, the defamed party is a private figure, only negligence need be shown. *LaMon v. Butler,* 112 Wn.2d 193, 197, 770 P.2d 1027, *cert. denied,* 110 S. Ct. 61 (1989).

Hermsen argued at trial that Demopolis was a public figure. The trial court rejected this argument. Without filing a cross appeal, or making assignments of error, Hermsen now challenges that ruling. Despite Hermsen's violations of the Rules of Appellate Procedure, we briefly address the public figure issue as it may arise on retrial.

For defamation purposes, a public figure is one who occupies a position of such persuasive power and influence that he or she is deemed a public figure for all purposes. *E.g., Vern Sims Ford, Inc. v. Hagel,* 42 Wn. App. 675, 678, 713 P.2d 736, *review denied,* 105 Wn.2d 1016 (1986). Persons who thrust themselves to the forefront to influence resolution of a public issue are limited public figures with respect to that issue. *Camer v. Seattle Post–Intelligencer,* 45 Wn. App. 29, 42, 723 P.2d 1195 (1986), *review denied,* 107 Wn.2d 1020, *cert. denied,* 482 U.S. 916 (1987); *Vern Sims Ford,* 42 Wn. App. at 678. A person is not considered a public figure solely because he or she sought relief through the courts or was involved in a newsworthy controversy. *Camer,* 45 Wn. App. at 42.

Here, the only evidence related to Demopolis' alleged status as a public, or limited public figure, was testimony that Demopolis had, in 1974, been involved with a consumer action group; that in 1983 he had been called to testify before the State Legislature on consumer issues; and that there had been public interest in the estate litigation from the "Anacortes area". Under *Camer* and *Vern Sims Ford,* this is inadequate to establish that Demopolis was either a public figure or a limited public figure at the time of the estate litigation.

*Times*, 96 Wn.2d 473, 482–83, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124 (1982). In the instant case, the trial judge ruled that Demopolis failed to meet his burden as to two elements: an unprivileged communication, and damages. We find that each of these rulings was based on incorrect application of the law, and reverse that part of the trial court's order which dismisses Demopolis' defamation claim against Hermsen and his law firm.

### UNPRIVILEGED COMMUNICATION

A. Absolute Privilege. We first address Demopolis' assignment of error to the trial court's ruling that Hermsen was immune from liability because his alleged defamatory statement was an absolutely privileged statement made in the course of a judicial proceeding. Demopolis argues that the statement had no relation to the estate litigation and that no public policy supports extension of the judicial proceeding privilege to a defamatory statement such as the one at issue here.[2]

An absolute privilege protects the maker of an otherwise defamatory communication from all liability for libel or slander. *Story v. Shelter Bay Co.*, 52 Wn. App. 334, 338, 760 P.2d 368 (1988). Defamatory communications made by a party or counsel in the course of a judicial proceeding are absolutely privileged if they are pertinent or material to the redress or relief sought. *McNeal v. Allen*, 95 Wn.2d 265, 267, 621 P.2d 1285 (1980); *accord*, Restatement (Second) of Torts §§ 586–587, § 586, comment *c* (1977). This privilege encompasses extrajudicial "pertinent" statements. Restatement, *supra* § 586, comment *a*; Annot., *Libel and Slander: Attorneys' Statements, to Parties Other Than Alleged Defamed Party or its Agents, in Course of Extrajudicial Investigation or Preparation Relating to*

---

[2]Because this matter is before us on a directed verdict, we assume for purposes of this appeal that Hermsen made the alleged defamatory statement. *E.g.*, *Blackburn v. Evergreen Chrysler Plymouth*, 53 Wn. App. 146, 148, 765 P.2d 922 (when reviewing a directed verdict, all evidence is considered in light most favorable to nonmoving party), *review denied*, 112 Wn.2d 1015 (1989).

*Pending or Anticipated Civil Litigation as Privileged,* 23 A.L.R.4th 932, 940–46 (1983); *cf. Story,* 52 Wn. App. at 340–41 (extending absolute privilege for statements made during the course of quasi–judicial administrative proceedings to statements made during the proceedings' investigatory phase). Thus, the fact that Hermsen's defamatory statement was made outside the courtroom does not necessarily prevent him from asserting the privilege.

Hermsen asserts that the defamatory statement was pertinent to the estate proceedings and therefore privileged because Demopolis' credibility was at issue in those proceedings, and because the statement was a continuation of Hermsen's cross examination of Demopolis.[3] We are not persuaded.

■ A statement is pertinent if it has some relation to the judicial proceedings in which it was used, and has any bearing upon the subject matter of the litigation. *Johnston v. Schlarb,* 7 Wn.2d 528, 540, 110 P.2d 190, 134 A.L.R. 474 (1941).

> The privilege . . . is confined to statements made by an attorney while performing his function as such. Therefore it is available only when the defamatory matter has some reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it. Thus the fact that the defamatory publication is an unwarranted inference from the evidence is not enough to deprive the attorney of his privilege. . . . On the other hand, the privilege does not cover the attorney's publication of defamatory matter that has no connection whatever with the litigation.

Restatement, *supra* § 586, comment *c.* The determination of pertinency is a question of law for the court, *Cooperstein v. Van Natter,* 26 Wn. App. 91, 95 n.2, 611 P.2d 1332, *review denied,* 94 Wn.2d 1013 (1980); Restatement, *supra* § 619(1), and should be based upon an examination of the whole proceeding to which the defamatory statements are alleged to be pertinent. *Johnston,* 7 Wn.2d at 540; *accord,*

---

[3]The record of the estate proceeding is not before us. We therefore cannot consider Hermsen's continuation claim.

*Green Acres Trust v. London,* 142 Ariz. 12, 688 P.2d 658, 671 (1983) (*Green Acres* I), *rev'd in part on other grounds,* 141 Ariz. 609, 688 P.2d 617 (1984) (*Green Acres* II); *McCarthy v. Yempuku,* 5 Hawaii App. 45, 678 P.2d 11, 15–16 (1984).

Whether Hermsen's statement is sufficiently pertinent to warrant an extension of the judicial proceedings privilege is a close question. Resolution of the issue is hampered by the lack of a record from the estate litigation,[4] and by the fact–specific nature of relevant decisions from this and other jurisdictions. *See, e.g., Sussman v. Damian,* 355 So. 2d 809, 812 (Fla. Dist. Ct. App. 1977) (attorney's defamatory attack on opposing counsel's integrity, made in the courthouse elevator after heated motion argument, was unrelated to cause at hand and therefore was not absolutely privileged);[5] *Cummings v. Kirby,* 216 Neb. 314, 343 N.W.2d 747 (1984) (attorney's posttrial defamatory statement to client, made during discussion of alternative posttrial procedures, was absolutely privileged); *Viss v. Calligan,* 91 Wash. 673, 675–76, 158 P. 1012 (1916) (no privilege for witness who "'broke out' during the course of his testimony and proceeded to defame the [defamation plaintiff]" with allegations irrelevant to the proceeding).[6] We therefore consider whether the purposes and policies of absolute privileges

---

[4]The only evidence relevant to the pertinence issue is the defamation trial testimony of Demopolis' estate litigation attorney that one of Hermsen's strategies in the estate litigation was to attack Demopolis' credibility, and that Hermsen had been cross–examining Demopolis just before he made the extrajudicial defamatory statement.

[5]Without any citation to authority, the *Sussman* court did find the statement to be qualifiedly privileged. 355 So. 2d at 812.

[6]The precise holding of *Viss* may no longer be good law. In *Bruce v. Byrne–Stevens & Assocs. Eng'rs, Inc.,* 113 Wn.2d 123, 125–27, 766 P.2d 666 (1989), the court implied that all statements made by a witness while testifying under oath are absolutely privileged. For other communications, however, the pertinency requirement is unquestionably still in force. *Southcenter Joint Venture v. National Democratic Policy Comm.,* 113 Wn.2d 413, 434, 780 P.2d 1282 (1989).

would be served by finding the requisite pertinency here, and hold that they would not.

■ "The absolute privilege, while broad in scope, has been applied sparingly. 'Absolute privilege is usually confined to cases in which the public service and administration of justice require complete immunity.'" *Herron v. Tribune Pub'g Co.*, 108 Wn.2d 162, 177, 736 P.2d 249 (1987) (quoting *Bender v. Seattle*, 99 Wn.2d 582, 600, 664 P.2d 492 (1983)). The privilege does not extend to statements made in situations for which there are no safeguards against abuse. *Story*, 52 Wn. App. at 338–39. Thus, an absolute privilege is allowed only in "situations in which authorities have the power to discipline as well as strike from the record statements which exceed the bounds of permissible conduct." *Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 476, 564 P.2d 1131 (1977).

We are convinced that it would not advance public service and the administration of justice to extend an absolute privilege to Hermsen's statement. An Arizona case is instructive:

> As an immunity which focuses on the status of the actor, the privilege immunizes an attorney for statements made "while performing his function as such." Restatement (Second) of Torts § 586, Comment c. We agree that "*special emphasis must be laid on the requirement that it [statement] be made in furtherance of the litigation and to promote the interest of justice.*" *Bradley v. Hartford Accident & Indemnity Co.*, 30 Cal.App.3d 818, 826, 106 Cal.Rptr. 718, 723 (1973) (emphasis in original). Without that nexus, the defamation only serves to injure reputation.

(Footnote omitted.) *Green Acres* II, 141 Ariz. at 613–14. The *Green Acres* II court also pointed out that although attorneys must have freedom to advance their clients' interests, a lawyer's duty to represent a client with zeal does not militate against the concurrent obligation to treat all persons involved in the legal process with consideration, and to avoid inflicting needless harm.[7] 141 Ariz. at 615.

---

[7]Washington imposes similar limitations on advocacy. *See* RPC 4.4 ("[i]n representing a client, a lawyer shall not use means that have no substantial purpose

Moreover, in the particular circumstances of this case there are no safeguards to protect against an abuse of the absolute privilege. Ordinarily in judicial proceedings the safeguards requirement is satisfied by the trial judge's ability to strike statements from the record, or by his or her power to impose perjury and contempt sanctions. *Herron,* 108 Wn.2d at 178. Here, the defamatory statement occurred off the record and out of the courtroom. Thus, ordinary safeguards are unavailable.[8]

Finally, we are concerned about the effect that extension of an absolute privilege to Hermsen's statement would have on the scope of the privilege. Hermsen argues that the defamatory accusation of perjury was pertinent to the estate litigation simply because Demopolis' credibility was at issue in that action. Accepting Hermsen's argument might greatly extend the privilege's scope since credibility is frequently an issue in litigation.

■ We hold that extrajudicial defamatory allegations relating to a party's honesty are not sufficiently "pertinent" to a judicial proceeding to clothe them with an absolute privilege, when the only basis alleged for finding the allegations pertinent is that the defamed party's credibility was at issue.

B. Qualified Privilege. Because the trial court found Hermsen's statement to be absolutely privileged, it did not reach Hermsen's alternative contention, that the statement was qualifiedly privileged. Nevertheless, both parties make

---

other than to embarrass, delay, or burden a third person"); RPC 4.1(a) (lawyer shall not knowingly make a false statement of material fact to a third person).

[8]We are not persuaded by Hermsen's argument that the safeguards requirement is satisfied because he could have been subjected to disciplinary action by the bar association, or contempt penalties. A disciplinary action, even if appropriate, would do nothing to compensate Demopolis for damage resulting from Hermsen's defamation, and we do not read *State ex rel. Erhardt v. MacGillivray,* 52 Wn.2d 485, 486, 326 P.2d 738 (1958), upon which Hermsen relies, as standing for the proposition that the court's inherent contempt powers would reach conduct such as Hermsen's.

argument on this issue. We address it, as the question is likely to arise on retrial.

A qualified privilege protects the maker from liability for a defamatory statement unless it can be shown that the privilege was abused. *Bender v. Seattle,* 99 Wn.2d 582, 600, 664 P.2d 492 (1983). The burden of establishing an abuse of a qualified privilege rests on the defamed party, who must show that the speaker acted with actual malice; *i.e.,* that he or she knew the statement was false, or had a high degree of awareness of its probable falsity. *Story,* 52 Wn. App. at 341–42.

Here, the trial court ruled that the issue of malice was a jury question, saying "I think it's a fact question . . . whether Mr. Hermsen made the statement with reckless disregard for the truth or whether he made the statement he knew to be false."[9] Given this finding, the question of whether Hermsen abused any qualified privilege was one for the jury.

We question, however, whether there would be a qualified privilege for the statements at issue here. A qualified privilege is recognized only in limited situations. *See Herron,* 108 Wn.2d at 177–80. The Restatement (Second) of Torts (1977) delineates the occasions which give rise to a conditional privilege: (1) communication to protect the publisher's interest; (2) communication to protect the interest of a recipient or a third person; (3) communication to one with a common interest in a particular subject matter; (4) communication to affect the well being of a family

---

[9]Hermsen challenges this finding, although he has made no assignments of error, nor filed a cross appeal. Although for purposes of this appeal, the finding is therefore a verity, *e.g., Hagemann v. Worth,* 56 Wn. App. 85, 89, 782 P.2d 1072 (1989); *see also State v. Stritmatter,* 25 Wn. App. 76, 80, 604 P.2d 1023 (1979), we note that the finding is amply supported by the record.

Demopolis presented evidence that immediately after Hermsen's defamatory accusation, Hermsen explained that he made the accusation because at some other time, a judge had stated that he disbelieved Demopolis' testimony. This indicates that Hermsen knew his declaration that Demopolis had been *convicted* of perjury was untrue, and therefore is sufficient to make the issue of Hermsen's actual malice a jury question.

member; (5) communication to one who may act in the public interest; and (6) certain communications by inferior state officers. Restatement, *supra* §§ 594–598A. From the record before us, it does not appear that Hermsen's statement falls within any of these categories. Moreover, no Washington case recognizing a qualified privilege in a circumstance other than those recognized by the Restatement has been located. We therefore caution the trial court to use great caution in considering whether to extend a qualified privilege on the evidence that may be presented on retrial.[10]

## DAMAGES

Demopolis' position at trial and on appeal, is that because the defamatory statement at issue was malicious libel per se, he did not have to prove actual damages.[11] The trial court made no ruling on this claim. Because Hermsen does not dispute that the defamatory communication was libel per se, for purposes of this appeal we treat it as such.

___

[10]The only case located containing any discussion of a basis for applying a qualified privilege to cases such as this one is *Petrus v. Smith,* 91 A.D.2d 1190, 459 N.Y.S.2d 173 (1983). In *Petrus,* an attorney called the opposing party a liar and a thief. The statement was made outside the courthouse, in the presence of the opposing party and his attorney. The *Petrus* court held that the statement was protected by a qualified privilege since it related to litigation in which the parties had a common interest.

*Petrus* is not authority for finding the common interest qualified privilege applicable here. Under Washington law, a common interest has been recognized only when the communication at issue is made to someone with whom the speaker is allied. *See Ward v. Painters' Local Union 300,* 41 Wn.2d 859, 865, 252 P.2d 253 (1953) (communications among union members concerning qualifications of officers and members); *Parry v. George H. Brown & Assocs., Inc.,* 46 Wn. App. 193, 730 P.2d 95 (1986) (communication among partners concerning a partnership lawsuit against a former partner); *see also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 115(3) (5th ed. 1984) (matter communicated must further publisher's and recipient's common interest). As litigation adversaries, Hermsen and Demopolis were not allied.

[11]Hermsen alleges that the libel per se issue was not raised in the trial court. The record contradicts this allegation. Demopolis' trial brief clearly discussed the question, and Demopolis' attorney sought to call the libel per se issue to the trial court's attention during argument on Hermsen's motion to dismiss.

In defamation cases, Washington courts have employed two meanings for the words "libel per se". The words may mean either (1) that the statement is libelous on its face, or (2) that it is actionable without proof of special damage in certain situations. *E.g., Caruso v. Local 690, Int'l Bhd. of Teamsters,* 100 Wn.2d 343, 353, 670 P.2d 240 (1983). The second of these meanings is at issue here.

In Washington, a libelous per se statement is actionable without proof of special damages only if the defendant acted with actual malice. *Caruso,* 100 Wn.2d at 354. This rule is based on *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 348–50, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974), in which the Supreme Court held that when defamation derives from negligence, not actual malice, a plaintiff may only recover for actual damages.

Since *Caruso* was decided, the scope of *Gertz* was limited in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 755–63, 86 L. Ed. 2d 593, 105 S. Ct. 2939 (1985), where a plurality held that if the defamatory communication at issue involved matters of purely private concern, damages could be presumed without finding that the declarant acted with actual malice. The lessened protection *Dun & Bradstreet* affords defamatory communications made in private disputes has been recognized by Washington courts, but not expressly adopted. *See Dunlap v. Wayne,* 105 Wn.2d 529, 534–35, 716 P.2d 842 (1986) (using *Dun & Bradstreet* rationale to impose usual summary judgment standard of proof in cases concerning statements about private affairs); *Vern Sims Ford, Inc. v. Hagel,* 42 Wn. App. 675, 681–83, 713 P.2d 736 (applying *Dun & Bradstreet* in dicta), *review denied,* 105 Wn.2d 1016 (1986). Thus, in *Story v. Shelter Bay Co., supra,* this court declined to adopt *Dun & Bradstreet* because "[t]he issue was not raised at trial [and] [w]ithout adequate briefing, we will not make such a significant change in this state's defamation law." 52 Wn. App. at 347. The briefing in

the instant case also does not persuade us to depart from *Caruso*.[12]

Under *Caruso*, Demopolis was not required to prove special damages if he established that Hermsen acted with actual malice. At the close of Demopolis' case, the trial court decided that whether Hermsen acted with actual malice was a question of fact for the jury.[13] Consequently, at that stage of the proceedings, Demopolis was not required to prove actual damages. The trial court's dismissal of Demopolis' defamation claim for failure to prove damages was therefore error.

### PEOPLES' LIABILITY

The trial court dismissed Peoples from the case on the ground that Hermsen and his law firm were independent contractors, and that Peoples therefore could not be liable for Hermsen's tortious acts. Demopolis challenges this ruling, arguing that under the Restatement (Second) of Agency (1958), a lawyer's client can be liable for the lawyer's torts.

Two Washington cases are relevant. In the more recent, *Evans v. Steinberg*, 40 Wn. App. 585, 588, 699 P.2d 797, *review denied*, 104 Wn.2d 1025 (1985), the court said without analysis that the client "is not liable for the acts of the defense attorneys who were acting as independent contractors."[14] The other Washington case, *Fite v. Lee*, 11 Wn.

---

[12]Demopolis argues that it can be difficult to prove actual damages, and cites two cases which have followed *Dun & Bradstreet: Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 n.3 (Ala. 1988), and *Cox v. Hatch*, 761 P.2d 556, 559–60 (Utah 1988).

[13]This finding is discussed in footnote 9.

[14]There is authority supporting the holding that an attorney is an independent contractor. The apparent majority of jurisdictions, however, treat the attorney–client relationship as one of principal–agent. *Compare Williams v. Burns*, 463 F. Supp. 1278, 1285 (D. Colo. 1979) (retained counsel is independent contractor); *with Green Acres* I, 688 P.2d at 664–65 (client liable for attorney's authorized defamatory statements); *accord, Bridge C.A.T. Scan Assocs. v. Ohio–Nuclear Inc.*, 608 F. Supp. 1187, 1197 (S.D.N.Y. 1985); *United Farm Bureau Mut. Ins. Co. v. Groen*, 486 N.E.2d 571, 573 (Ind. Ct. App. 1985).

App. 21, 521 P.2d 964, 97 A.L.R.3d 678, *review denied*, 84 Wn.2d 1005 (1974), provides a detailed and thus more persuasive analysis.

*Fite* concerned whether a client could be held liable for his or her attorney's abuse of legal process. The court rejected the claim that the attorney–client relationship is an ordinary agency relationship, saying:

> An attorney in discharging his professional duties acts in a dual capacity. In a limited or restricted sense he is an agent of his client. But he has powers, including those to issue judicial process, far superior to those of an ordinary agent.
>
> As an officer of the court, his duties are both private and public. Where the duties to his client to afford zealous representation conflict with his duties as an officer of the court to further the administration of justice, the private duty must yield to the public duty. He therefore occupies what might be termed a "quasi–judicial office."
>
> By its very nature, an abuse of legal process by an attorney . . . violates an attorney's oath, his canons of ethics, and his duty to the public as an officer of the court. . . .
>
> Accordingly, the scope of the attorney's implied authority as an agent should not, as a matter of law, extend to acts which constitute an abuse of legal process. . . .
>
> It follows then that if an attorney has, without the knowledge or consent of his client, abused process to the damage of another, the attorney acts outside the scope of his agency and the client should not be derivatively liable.

(Citations omitted.) 11 Wn. App. at 28–29; *see also* Restatement (Second) of Agency § 1, comment *e* (1958) (opining that clients can in some situations be liable for the torts of their attorneys).

■ Applied in a defamation setting, *Fite* seemingly limits a client's liability for his or her attorney's defamatory communications to situations in which the attorney acted within the scope of employment, and with the client's knowledge and consent. In the instant case, the record contains no evidence that Peoples authorized Hermsen to accuse Demopolis of being convicted of perjury or concurred in the alleged accusation. Accordingly, whether we were to follow the officer–agent rationale of *Fite,* or the independent contractor rationale of *Evans,* Peoples' dismissal must be affirmed.

CONSUMER PROTECTION ACT CLAIM

We lastly address Demopolis' contention that the trial court erred when it dismissed his CPA claim. His contention fails under the rule of *Short v. Demopolis,* 103 Wn.2d 52, 60–61, 691 P.2d 163, *cert. denied,* 474 U.S. 827 (1984), that the CPA applies only to the entrepreneurial or commercial aspects of a legal practice. The CPA does not apply to claims directed to the competence of and strategy employed by attorneys. *Haberman v. WPPSS,* 109 Wn.2d 107, 109, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed,* 488 U.S. 805 (1988). Since an attorney's defamatory allegation is neither an entrepreneurial nor a commercial endeavor, it cannot give rise to a CPA claim.

The dismissal of Demopolis' defamation claim against Hermsen and Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S. is reversed. All other aspects of the judgment are affirmed.

GROSSE, A.C.J., and SWANSON, J., concur.