74 F.3d 722
 Prod.Liab.Rep. (CCH) P 14,477
Taaron SCHAFFER, a minor, BY her mother and next friend,
Constance SCHAFFER; Leah Schaffer, a minor, by her mother
and next friend, Jeanne Schaffer; Constance Schaffer,
individually and as administrator of the estate of Gary L.
Schaffer, deceased; and Jeanne Schaffer, individually and
as administrator of the estate of David Schaffer, deceased,
Plaintiffs-Appellants,
v.
A.O. SMITH HARVESTORE PRODUCTS, INC., A.O. Smith
Corporation, Hedlund Manufacturing Company, and
Gehl Company, Defendants-Appellees.
 No. 94-3526.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 31, 1995.
Decided Feb. 6, 1996.
Rehearing Denied March 8, 1996.
 
 Frederick J. McGravran (argued), Frost & Jacobs, Cincinnati, OH, Robert S. Marshall (briefed), and James T. Ball (briefed), Chicago, IL, for Plaintiffs-Appellants.
 Richard S. Walinski (argued and briefed), Margaret J. Lockhart (briefed), Cooper, Straub, Walinski & Cramer, Toledo, OH, Michael S. Scalzo (argued), and James H. Irmen (briefed), Marshall & Melhorn, Toledo, OH, for Defendants-Appellees.
 James D. Dennis (briefed), Dayton, OH, Michael R. Thomas (briefed), Casper & Casper, Middletown, OH, Jeffrey W. Hutson, Lane, Alton & Horst, Columbus, OH, Kevin M. Reynolds (briefed), and Richard J. Kirschman, Whitfield & Eddy, Des Moines, IA, for Amici Curiae.
 Before: JONES and BOGGS, Circuit Judges; CHURCHILL, District Judge.*
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Plaintiffs, the two widows and two minor daughters of two deceased brothers, David Schaffer and Gary Schaffer, are appealing the district court's summary judgment for Defendant companies, A.O. Smith Corporation ("A.O. Smith"), A.O. Smith Harvestore Products, Inc. ("Harvestore"), Hedlund Manufacturing Company ("Hedlund"), and Gehl Company ("Gehl"), in this products liability action. For the reasons stated herein, we affirm the district court's grant of summary judgment as to all Defendants. We reverse, however, the holding of the district court regarding the application of Ohio Revised Code Sec. 2305.131 and the district court's finding that Ohio law precludes strict liability in failure to warn cases.
 
 
 2
 * On June 26, 1989, the Schaffer brothers drowned in a six-foot-deep pit of liquified cow manure, located on their family dairy farm in Monroeville, Ohio. The pit was part of a manure collection system comprised of component parts manufactured and sold by Harvestore, Hedlund, and ADL Systems, Inc. ("ADL"). The brothers had been submerged for at least an hour and were found by their father, brother, and best friend. No one witnessed the incident; hence, it is not known with certainty how the deaths occurred. Plaintiffs' expert reconstruction of the accident has postulated that Gary fell into the pit while operating the pit pump after being overcome by gasses emanating from the manure, and his brother David drowned while trying to save him. Gary was found dressed in his street clothes and shoes, and with his wallet in his pocket; David apparently had removed his shirt, shoes, and socks prior to entering the pit.
 
 
 3
 The relevant facts prior to this accident follow. In the fall of 1978, the Schaffers built a barn for their cows, and installed a gutter cleaner in the floor of the barn that removed cow manure mechanically. As the Schaffers' system for handling manure was originally designed, the gutter cleaner conveyed the manure to an open yard where it was deposited into a loader or a spreader and then spread on the fields as fertilizer.
 
 
 4
 For various reasons, the Schaffers decided to modify their system for handling manure, and discussed their needs with Chuck Thompson, a salesman for Gateway Harvestore, Inc. ("Gateway"), a local agricultural equipment dealer.[1] Ultimately, the Schaffers chose to purchase a prefabricated concrete underground reception pit, a chopper-transfer pump, and an above-ground manure storage tank, "Slurrystore," and in early 1979, the Schaffers had all of these items installed on their farm as a "manure handling system." As conceived, in this handling system, the manure would be conveyed and dropped into the pit by the existing gutter cleaner as well as scraped from an outdoor yard. The chopper-transfer pump would be installed in the reception pit and would chop the manure into a slurry--a mixture of manure and water--and then transfer the mixture from the reception pit to the storage tank. This system was unique, fashioned to meet the Schaffers' individual needs, and contained components manufactured by various companies.
 
 
 5
 Based on Mr. Thompson's advice, the Schaffers selected the products they wished to purchase. Mr. Thompson submitted a purchase order to Gateway for the specific items. These items included an 8' (wide) X 10' (long) X 6' (deep) precast reception pit and lid manufactured by ADL, a chopper-transfer pump manufactured by Hedlund, and a Slurrystore manure storage tank manufactured by Harvestore. Gateway then ordered these products from the individual manufacturers, arranged delivery to the Schaffer farm, and selected independent contractors to install the various components.
 
 
 6
 In ordering the chopper-transfer pump, Mr. Thompson made a mistake and ordered a 7' pump instead of a 5' pump, and consequently the pump was too tall for the 6' deep pit. To remedy the problem, Gateway attached an angle-iron frame to the pit lid to elevate the pump so that it would fit into the pit.
 
 
 7
 Shortly after their first season with the new manure handling system, the Schaffers began to have freezing problems with the chopper-transfer pump. The freezing problems were due to the placement of part of the pump's plumbing above ground level and the frost line, rather than below ground and directly affixed to the tank. The Schaffers constructed a shed over the pit and chopper-transfer pump which it ventilated with two windows and three doors. The Schaffers used the system for the next ten years, running it every morning and afternoon. On two occasions they removed the chopper-transfer pump for repair.
 
 
 8
 At the time the Schaffer brothers died, there were two openings in the lid of the reception pit: a 2' X 10' scraper opening on the south side of the pit, and a 3' X 5' opening where the chopper-transfer pump sat mounted on the angle-iron frame. Although a large portion of the latter opening was covered by the pump and the mounting frame, there remained openings into the pit on either side of the pump frame as well as a small opening through the top of the frame. There were no grates covering any of the openings. Apparently, the Schaffer brothers entered the pit through one of these openings and drowned.
 
 
 9
 As a result of the drowning, Plaintiffs commenced a products liability action on June 25, 1991 against fourteen defendants,[2] alleging over one hundred counts. Between September 16, 1991 and October 27, 1993, all of the defendants to the original action and related counts were dismissed for various reasons, not related to this appeal, with the exception of the component manufacturers, ADL, Harvestore, and Hedlund, Hedlund's successor corporation, Gehl, and Harvestore's parent corporation, A.O. Smith. With respect to these defendants, the complaint alleged that they had been negligent in their manufacture and selling of the system's parts, were strictly liable for the fatalities, were in breach of warranty, and were liable for punitive damages. On August 12, 1993, the court granted them partial summary judgment on Plaintiffs' breach of warranty claims. Plaintiffs have not appealed this judgment. The Plaintiffs have appealed, however, the October 23, 1993 summary judgment granted to Defendant A.O. Smith. On February 4, 1994, ADL, the pit manufacturer, settled with the Plaintiffs, and a Stipulation and Order of Dismissal of ADL Systems was entered.
 
 
 10
 Harvestore, Hedlund, and Gehl, the remaining Defendants, were granted leave to file a second motion for summary judgment, and on April 1, 1994, the district court granted summary judgment on all of Plaintiffs' remaining claims. The Plaintiffs also appeal this grant of summary judgment.
 
 II
 
 11
 "We review a district court's grant of summary judgment de novo. ... [I]n a motion for summary judgment, '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.' " Russo v. Cincinnati, 953 F.2d 1036, 1041-42 (6th Cir.1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986), and citing Vollrath v. Georgia-Pacific Corp., 899 F.2d 533, 534 (6th Cir.), cert. denied, 498 U.S. 940, 111 S.Ct. 345, 112 L.Ed.2d 310 (1990)).
 
 
 12
 Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir.1990). This means that after the opportunity for discovery, if the moving party demonstrates that there is no genuine issue of material fact as to the existence of any element essential to the non-moving party's case, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once this initial burden is met, it becomes the burden of the nonmoving party to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592-93, 20 L.Ed.2d 569 (1968)).
 
 III
 
 13
 A myriad of issues and arguments have been raised in this appeal asserting that summary judgment was improper. To adequately focus those issues for our de novo review, we reflect upon the district court's findings.
 
 
 14
 The district court found that the component manufacturers had no duty to warn because Ohio law imposes a duty on component part manufacturers to warn or instruct about potential dangers of the systems into which their products could be integrated in limited circumstances only, which did not exist in the case at bar, and also because Ohio Revised Code Sec. 2305.131 barred Plaintiffs' claims. Specifically, the court found that: Harvestore did not market a complete manure system; Hedlund satisfied any duty it may have had as a matter of law; and Gehl was absolved of any potential liability when Hedlund was found not liable. With respect to the earlier summary judgment in favor of A.O. Smith, the court found that vicarious liability was not alleged and there was no evidence of any action on the part of A.O. Smith that could lead to liability.
 
 
 15
 Plaintiffs assign error to the district court's application of Ohio Revised Code Sec. 2305.131, and to the district court's ruling that strict liability is not applicable to failure to warn or instruct claims. Further, Plaintiffs assert that the evidence they presented established that Defendants' products were defective, that Defendants had a duty to warn or instruct, and that the warnings or instructions were inadequate. Finally, Plaintiffs assert that they were denied evidence crucial to defeat Defendants' motion for summary judgment.
 
 IV
 
 16
 Initially we turn to the district court's alternative holding that Ohio Revised Code Sec. 2305.131[3] bars Plaintiffs' claims against Harvestore and Hedlund. The district court found that Defendants' products qualified as an improvement to real property, and thus the statute barred Plaintiffs' claims. J.A. at 2165-66. In dismissing Plaintiffs' claims that the statute as applied to them was unconstitutional, the district court relied on the Ohio Supreme Court's decision in Sedar v. Knowlton Constr. Co., 49 Ohio St.3d 193, 551 N.E.2d 938 (1990), which upheld the statute's constitutionality. Subsequently, however, the Ohio Supreme Court has revisited this conclusion and overruled Sedar, holding instead that Ohio Revised Code Sec. 2305.131 "violates the right to a remedy guaranteed by Section 16, Article I of the Ohio Constitution, and is, thus, unconstitutional." Brennaman v. R.M.I. Co., 70 Ohio St.3d 460, 466, 639 N.E.2d 425, 430 (1994), opinion amended on grant of motion for clarification, 71 Ohio St.3d 1211, 643 N.E.2d 138 (Ohio 1994). In light of Brennaman, this Court must REVERSE the portion of the district court's decision addressing Ohio Revised Code Sec. 2305.131.
 
 
 17
 Reversal on the above grounds, however, does not vitiate the validity of the district court's grant of summary judgment. As mentioned, application of the statute was merely an alternative ground for the district court's order. Accordingly, the remaining issues upon which summary judgment was based are discussed below.
 
 V
 
 18
 The central arguments Plaintiffs raise in this appeal are that the district court erred in granting summary judgment because Plaintiffs have presented evidence that: (1) Harvestore's and Hedlund's instruction manuals were defective; (2) the placement of the Hedlund's chopper-transfer pump's mode lever was defective; and (3) Harvestore marketed a complete manure handling system thereby creating a duty to warn.
 
 A. Harvestore
 
 19
 Plaintiffs have not alleged any specific defect in the individual component parts of the pit, the chopper-transfer pump, or the Slurrystore manure storage tank. Consequently, the district court found that "plaintiffs have set forth no defects in defendant's individual component parts." J.A. at 2163; see also id. at 2169. Plaintiffs continue to argue, however, that they have alleged defective components. They assert that "Harvestore's 'Slurrystore manure handling system' component training manuals and instructions given to Harvestore's 'Slurrystore System Answerman' Chuck Thompson, the owner's manuals given to the Schaffers, as well as certain warnings, were all defective." Plaintiffs' Br. at 33 (emphasis in original). Although the manuals appear to fit within the literal language of the statutory definition of "product" for purposes of Ohio product liability claims, see Ohio Revised Code Ann. Sec. 2307.71(L) (Anderson 1995), the language of the definitions provision as a whole indicates that training and instruction manuals are not so intended. See Ohio Revised Code Ann. Sec. 2307.71(M) (Anderson 1995); see also Harvestore's Br. at 45-46. Without any evidence of defect in the component parts themselves, summary judgment is appropriate as to the defective products claims. Nevertheless, we conclude that Plaintiffs' errant defective products claims are more appropriately characterized as inadequate warning claims and will address them under such framework.
 
 
 20
 The question of whether a manufacturer has a duty to warn is purely a question of law. Mussivand v. David, 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 269 (1989). As Harvestore correctly points out, "[w]hether a duty exists, therefore, is not a material issue of triable fact." Harvestore's Br. at 41.
 
 
 21
 Under Ohio law a manufacturer of a non-defective component part has no duty to warn about dangers that may result when the part is integrated into another product or system, where the component manufacturer was not involved in the design or assembly of the integrated product or system. Brennaman, 639 N.E.2d at 431. In Brennaman, the Ohio Supreme Court reaffirmed the principle it first expressed in Temple v. Wean United, Inc., 50 Ohio St.2d 317, 318, 364 N.E.2d 267, 269 (1977) that, "[t]here is no duty to warn extending to the speculative anticipation of how manufactured components, not in and of themselves dangerous or defective, can become potentially dangerous dependent upon their integration into a unit designed and assembled by another." Brennaman, 639 N.E.2d at 431 (emphasis added). In the instant case, however, one of the arguments Plaintiffs proffer is that Harvestore was more than a mere "component manufacturer," but in fact was involved in the design and marketing of the manure handling system, including all components. A careful reading of this court's decision in Miles v. Kohli & Kaliher Assoc., Ltd., 917 F.2d 235 (6th Cir.1990), reveals that this claim, if supported by some evidence, could have merit. In Miles, this court explained:
 
 
 22
 Under ... circumstances, where an assembler had total control over the final product and far greater knowledge as to its dangerous propensities, the Ohio courts of appeals held that the component part manufacturers were under no duty to warn of speculative dangers, provided the parts were delivered in conformity with specifications. Here, by contrast, it was the component supplier ... that provided the specifications for both the culvert and the component arch. [The component manufacturer] also drew up the instructions for assembling all components into the culvert. Having supplied numerous plate arches for use in culverts in the past, [the component manufacturer] had far greater information regarding dangerous propensities in the completed structure than did [the assembler or buyer]. In the case before us, the positions of the component maker and the assembler concerning control over and information about the final product are precisely the opposite of those encountered by the Ohio courts in the cases cited. We therefore cannot agree that the rule announced in Temple and Searls [v. Doe, 29 Ohio App.3d 309, 505 N.E.2d 287 (1986) ] forecloses inquiry into whether [the component manufacturer's] duty of ordinary care included warning [the buyer] of the possibility of collapse if the bridge were not constructed in conformity with proper instructions.
 
 
 23
 917 F.2d at 245. In light of this holding, the critical question with respect to this argument is whether Plaintiffs have presented evidence that Harvestore was involved in the design and/or assembly of the total manure handling system so as to give rise to a duty to warn of potential dangers of improper assembly of the system.
 
 
 24
 In addressing this issue, the district court initially found that promotional literature disseminated by Harvestore, indicating that Harvestore was marketing a manure handling system, was sufficient evidence from which "a reasonable jury [could] find that defendant marketed a complete manure handling system and therefore could be liable for its defects." J.A. at 2160. Subsequently, however, the district court changed its view after determining that (1) the materials were irrelevant because they were published after the Schaffers purchased their manure handling system, and (2) the Schaffers did not purchase all the components of their system from Harvestore. J.A. at 2161. The district court concluded that because there was no evidence that Harvestore had marketed an integrated manure handling system, it had no duty to warn. The district court further distinguished Miles from the instant case because "the manufacturer in Miles produced an entire kit which included several components, and provided specifications and instruction for construction. [The] defendant's role in the design and construction of plaintiffs' manure handling system is much closer to the role of the manufacturers in Temple and Searls than the manufacturer in Miles." J.A. at 2161-62. However, the district court's focus on whether Harvestore marketed an entire system misframes the issue. Instead, the critical issue for determining whether Harvestore had a duty to warn turns more intimately on the extent of its involvement in the design and assembly of the finished system. If Harvestore provided instruction manuals for designing, constructing, and/or assembling a manure handling system which included component parts it manufactured, the company would have a duty to warn of foreseeable dangers resulting from a failure to follow such instructions. In the instant case, however, Plaintiffs have presented no evidence of such instructions. Plaintiffs have presented evidence of marketing literature, of operators manuals, and of a "Livestock Waste Facilities Handbook," see J.A. at 1199-1403, but no evidence of the instructions that might have been used to assemble/construct the system. In the absence of such evidence, Harvestore was under no duty to warn.
 
 
 25
 We have come to the same conclusion as the district court. The court, however, proceeded to find that under Ohio law an "alleged failure to instruct or warn does not support a strict liability claim," and consequently, even if Plaintiffs had proved a duty to warn, Defendants would not be strictly liable. See J.A. at 2164. We cannot agree. Ohio courts have clearly held that strict liability may result from a failure to warn. See Crislip v. TCH Liquidating Co., 52 Ohio St.3d 251, 255, 556 N.E.2d 1177, 1181 (1990) ("[A] product may be unreasonably dangerous and strict liability may apply as the result of the lack of an adequate warning even though the product has no design or manufacturing defect."). Even so, this error is inconsequential as this court has found that Defendants were under no duty to warn.
 
 B. Hedlund
 
 26
 With respect to Defendant Hedlund, Plaintiffs argue that Hedlund's placement of the pump's mode lever was defective. They suggest that this allegation sounds in strict liability for a defective product and should not have been treated as a failure to warn claim. The foundation for Plaintiffs' argument is that the placement of the mode lever is defective when combined with the likelihood of a user falling into an unguarded opening around the pump when reaching to change the mode. Consequently, the location of the mode lever on the pump is not defective when viewed alone. Because Hedlund was not involved in the installation or guarding of the pit, Plaintiffs' argument necessarily must fail. Plaintiffs have produced no evidence of defect attributable to Hedlund. Moreover, Plaintiffs' suggested cure for the alleged "defective mode lever" would be a warning regarding potential risks. Plaintiffs' Br. at 42. Accordingly, this claim was properly treated as a failure to warn claim.
 
 
 27
 Consistent with the analysis supplied above concerning a component manufacturer's duty to warn, Hedlund, as a component manufacturer who merely sold a pump to Gateway, had no duty to warn. Further, had the pump been installed according to Hedlund's specifications,[4] and had the mode lever remained in the position instructed in Hedlund's manual, then Plaintiffs might have a claim. Yet, the pump was not installed as Hedlund recommended, and furthermore, several years after installation, the Schaffers changed the location and operation of the mode lever. See J.A. at 2168. Additionally, Hedlund's warnings regarding its pump were adequate for its foreseeable uses. Even if Hedlund's pump were in some way defective, Hedlund was under no duty to warn about dangers resulting from an unforeseeable improper installation of its pump. See Hargis v. Doe, 3 Ohio App.3d 36, 37, 443 N.E.2d 1008, 1010 (1981) (explaining that duty to warn is the duty "to exercise reasonable care to give the user information which [the manufacturer] has and which [the manufacturer] should realize would be necessary to make the use of the product safe").
 
 VI
 
 28
 Because the district court properly dismissed Plaintiffs' underlying claims, Plaintiffs' claims for punitive damages necessarily fail. Also, Plaintiffs' allegations of "failure to train" are misplaced, as they all directly relate to Gateway, not a party to this appeal. Plaintiffs attempt to use Harvestore and Gateway interchangeably; they are not interchangeable. Further, summary judgment is appropriate for Gehl because Gehl was not involved in the design, manufacture, sale, or financing of the pump, and since we find no liability for Hedlund, Gehl incurs no liability as Hedlund's successor in interest.
 
 VII
 
 29
 Summary judgment for A.O. Smith was granted on the grounds that Plaintiff had not alleged vicarious liability against A.O. Smith and had produced no evidence that A.O. Smith was involved directly in any alleged negligent actions or alleged defective manufacture of design. The Plaintiffs suggest that in this appeal, "the action against A.O. Smith is based on its vicarious liability for Harvestore." Plaintiffs' Br. at 3. As Plaintiffs never alleged vicarious liability in their complaint, summary judgment is appropriate for A.O. Smith. The district court correctly pointed out that, "[i]n addition to not pleading a basis for vicarious liability, the plaintiffs did not meet their burden of overcoming the presumption that [A.O. Smith] and its subsidiary are separate entities, and entitled to be treated as such ... [t]hat being the case, there is no basis on which a jury could hold [A.O. Smith] liable for any acts of its subsidiary." J.A. at 1950-51.
 
 VIII
 
 30
 Lastly, Plaintiffs argue that the district court abused its discretion when it failed to consider Plaintiffs' Rule 56(f) affidavit submitted in opposition to Defendants' motions for summary judgment. Plaintiffs' Br. at 48. In the twenty-page affidavit, J.A. at 1410-31, the Plaintiffs explain that they cannot fully oppose Defendants' motions for summary judgment due to Defendants' failure to comply with numerous discovery requests, including a request for "[a]ny and all documentation regarding any instructions given to Harvestore dealers regarding the design and assembly of manure storage and handling systems." J.A. at 1413. Indeed, this request appears to be for the very type of evidence Plaintiffs need to show that Harvestore might have a duty to warn under Miles. Plaintiffs' claim is problematic, however, for the following reason. The affidavit was submitted in response to Defendants' first motions for summary judgment, which the court only partially granted. Plaintiffs do not appear to have raised the issue of these discovery problems again when opposing Defendants' second round of motions for summary judgment, the summary judgments which Plaintiffs appeal.
 
 
 31
 Additionally, as Defendants point out, see Harvestore's Br. at 28, the district court expressly addressed Plaintiffs' Rule 56(f) affidavit and found it to be insufficient. In its Memorandum and Order filed August 12, 1993, in which the district court ruled on Defendants' first motions for summary judgment, the court stated the following:
 
 
 32
 Plaintiffs' attorney's affidavit is insufficient to justify postponing decision of the summary judgment motions in this case. Plaintiffs' attorney does not state what additional discovery he wishes to undertake, or how a postponement will assist him in rebutting defendants' motions. Counsel's affidavit merely restates interrogatories that have previously been propounded on defendants.
 
 
 33
 A great deal of discovery has already been undertaken by all parties to this litigation: plaintiffs have been granted leave to file interrogatories in excess of the maximum number allowed by local rule, numerous witnesses have been deposed, and several depositions have been filed with the Court. Plaintiffs have presented forty-six exhibits in support of their response to defendants' motions. It is unclear what purpose additional discovery in this matter would serve.
 
 
 34
 Additionally, Rule 56(f) is not a substitute for diligently pursuing discovery. See Dukes v. Bolden, 958 F.2d 371 (6th Cir.1992) [unpublished per curiam]. The discovery deadline in this case has long since passed. Plaintiffs have not attempted to obtain judicial intervention in the discovery process pursuant to Local Rule 8:7.4. Consequently, they cannot now be heard to argue that their discovery was inadequate to allow them to respond to summary judgment. Plaintiffs have had an adequate time in which to discover their case. Therefore, their request to postpone ruling on defendants' motions in order to permit additional discovery is overruled.
 
 
 35
 J.A. at 1925-26. In raising the issue of their Rule 56(f) affidavit before this court, Plaintiffs do not explain why the district court's decision is error other than to claim that "[t]here is absolutely no reason why [the requested] material should not have been produced to plaintiff." Plaintiffs' Br. at 49. Plaintiffs have not explained why they did not bring Defendants' alleged numerous failures to comply with discovery requests to the attention of the court in a timely manner. Consequently, Plaintiffs have not sufficiently rebutted this holding, or otherwise indicated how the district court abused its discretion in refusing to consider the Rule 56(f) affidavit further.[5]
 
 IX
 
 36
 As Plaintiffs have failed to muster sufficient evidence to show that Defendants had a duty to warn about the potential dangers of the Schaffers' manure handling system, the district court did not err in granting summary judgment to Defendants. For the foregoing reasons, we AFFIRM the decision of the district court to grant the summary judgment but REVERSE the portions of the opinion which apply Ohio Revised Code Sec. 2305.131 and deny the applicability of strict liability to failure to warn claims.
 
 
 
 *
 The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Defendants explain that Gateway sold products of various manufacturers of agricultural equipment, including Hedlund, ADL, and Harvestore. A different dealer had sold Harvestore products in the Gateway area, but when that company stopped selling those products, which included the manure storage tank ( "Slurrystore" ), Harvestore incorporated Gateway. Harvestore owned Gateway as an independent subsidiary until 1980 when it sold the stock in Gateway to the officers of Gateway who had managed the company since its formation. Clearly, Harvestore owned Gateway at the time Thompson sold the products to the Schaffers. Gateway, of course, was free to sell the products of other manufactures. Harvestore's Br. at 5 n. 5
 
 
 [2]
 The following entities and individuals were defendants in the original action: A.O. Smith Corporation, A.O. Smith Enterprises, Ltd., A.O. Smith Harvestore Products, Inc., Smith Fiberglass Products, Inc., Gateway Harvestore, Agristor Credit Corporation, Hedlund Manufacturing Company, Gehl Company, VanDale, Inc., ADL Systems, Inc., the United States of America, David Frederick, W. Belcher, and Chuck Thompson
 
 
 [3]
 This section provides the following:
 No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, more than ten years after the performance or furnishing of such services and construction. This limitation does not apply to actions against any person in actual possession and control as owner, tenant, or otherwise of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.
 Ohio Rev.Code.Ann. Sec. 2305.131 (Anderson 1995).
 
 
 [4]
 The Hedlund-Vaughan Chopper Pump Manual recommended the following:
 "Hedlund-Vaughan pumps are built in one foot increments from 4' to 15'. The pump must always be one foot shorter than the distance from the top of the pit cover to the top of the floor. Example: An 8' deep pit requires a 7' Pump. One foot of clearance is required below the pump impeller for materials to move freely."
 Hedlund's Br., Appendix (Plaintiffs' Exhibit 25).
 
 
 [5]
 Under Federal Rule of Civil Procedure 56(f), it is within the district court's discretion whether to go forward with a ruling on a pending motion for summary judgment when the opposing party files an affidavit which states why the party is unable to respond adequately to the motion at that time. Specifically the rule states the following:
 Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
 Fed.R.Civ.P. 56(f).