**COMPUTER AID, INC., and Computer Aid, Inc., trading and d/b/a New Century Communications, Plaintiffs,**

v.

**HEWLETT–PACKARD COMPANY, Sydney Fluck, and AM Communications, Inc., Defendants.**

**Hewlett–Packard Company, Plaintiffs,**

v.

**Computer Aid, Inc., and Computer Aid, Inc., trading and d/b/a New Century Communications, and Anderson Kill & Olick, P.C., Defendants.**

**Civil Action Nos. 96–CV–4150, 97–CV–0284.**

United States District Court, E.D. Pennsylvania.

June 15, 1999.

*MEMORANDUM AND ORDER*
VAN ANTWERPEN, District Judge.

## I. INTRODUCTION

This case is before us on Motions for Summary Judgment. Case No. 96–CV–4150 was filed in this court by Plaintiffs Computer Aid, Inc. and Computer Aid, Inc., Trading and d/b/a New Century Communications (hereafter, "Computer Aid") on June 5, 1996. Computer Aid brought multiple causes of action against Defendants Hewlett–Packard Company (hereafter, "Hewlett–Packard") and one Sydney Fluck, an employee of Hewlett–Packard. Two months later, on August 26, 1996, Hewlett–Packard filed a separate suit in the Northern District of California seeking a declaratory judgment that a number of the claims brought by Computer Aid in the Pennsylvania suit (96–CV–4150) were invalid. This suit also brought claims that Computer Aid and its attorneys, Anderson Kill & Olick, P.C. (hereafter, "Anderson Kill"), had committed defamation and related torts by issuing a Press Release which accompanied the initial suit in Pennsylvania (hereafter, "Press Release"). This California action was transferred to our court on December 3, 1996, pursuant to the first to file doctrine. In accordance with the procedures of our court, this case was given file No. 97–CV–0284 and was assigned to the same judge who was handling the original case No. 96–CV–4150. Both cases were consolidated by Order of this court on March 14, 1997.

In their Answer and Counterclaims filed January 27, 1997, in the original action, No. 96–CV–4150, Hewlett–Packard and Sydney Fluck have raised a series of

Counterclaims. Hewlett–Packard's Counterclaim Count V raises tort claims of trade libel against Computer Aid and Anderson Kill. Hewlett–Packard's Counterclaim Count VIII alleges a tort of injurious falsehood against Computer Aid and Anderson Kill. Sydney Fluck raises claims of libel in his Second Counterclaim Count and claims of injurious falsehood in his Third Counterclaim Count. In addition, Hewlett–Packard alone in Counterclaim Counts VI, VII and IX alleges, respectively: the torts of common law unfair competition, statutory unfair competition, and interference with contract against Computer Aid. Anderson Kill filed Motions on March 4, 1999 seeking summary judgment with regard to Hewlett–Packard's Counterclaim Counts V and VIII and also with regard to Sydney Fluck's Counterclaim Counts II and III. Computer Aid filed Motions on March 19, 1999 seeking Summary Judgment with regard to Hewlett–Packard's Counterclaim Counts V, VI, VII, VIII and IX and also with regard to Sydney Fluck's Counterclaim Counts II and III.

The thrust of Computer Aid and Anderson Kill's arguments against the Counterclaims of defamation and injurious falsehood is that their conduct is protected under the Fair Report Privilege. Computer Aid and Anderson Kill also argue that Hewlett–Packard and Sydney Fluck have failed to show that Computer Aid and Anderson Kill acted with the "actual malice" necessary if Hewlett–Packard and Sydney Fluck are either public figures or limited purpose public figures. Computer Aid argues also that Hewlett–Packard and Sydney Fluck have failed to make the requisite showing of special damages to succeed on their respective injurious falsehood claims. Additionally, Computer Aid argues that Hewlett–Packard's Counts VI and VII, common law and statutory unfair competition, must fail·because they are unsubstantiated and seek improper damages. Finally, the parties all agree that Hewlett–Packard has conceded it has no valid interference with contract claim against Computer Aid as set forth in Counterclaim Count IX.

We believe both Computer Aid and Anderson Kill should prevail on summary judgment on Hewlett–Packard and Sydney Fluck's counterclaims for injurious falsehood. Computer Aid is also entitled to partial summary judgment on Hewlett–Packard's counterclaim for common law and statutory unfair competition. However, as we must consider the facts in the light most favorable to the non-moving party in summary judgment, we believe neither Computer Aid nor Anderson Kill is entitled to summary judgment on Hewlett–Packard and Sydney Fluck's defamation Counterclaims.

## II. FACTS

The underlying complaint centers on a failed relationship between Computer Aid and Hewlett–Packard. On November 10, 1993 Computer Aid and CaLan, a cable television testing and monitoring equipment manufacturer, entered into an agreement to develop a product known as Galaxy (hereafter, "Agreement"). Sydney Fluck was the president and chief executive officer in addition to being the chairman of the board of directors of CaLan at that time. CaLan merged with Hewlett–Packard on July 8, 1994. As a result, Hewlett–Packard became legal successor to CaLan's rights and obligations under the Agreement and Sydney Fluck became a manager at Hewlett–Packard. Subsequently, Hewlett–Packard and Computer Aid have been unable to agree on the scope of their respective rights and obligations.

Between July 1994 and January 1995 the relationship between Computer Aid and Hewlett–Packard deteriorated, with claims of non-cooperation and non-performance under the Agreement from both sides. In January, 1995, Hewlett–Packard purported to terminate the agreement with Computer Aid. Hewlett–Packard now takes the position that the Agreement created a work-for-hire relationship with

Computer Aid and that the Galaxy software is the exclusive property of Hewlett–Packard, CaLan's successor in interest. Computer Aid alleges that the Agreement created a joint venture and that it owns those parts of Galaxy which it developed. Computer Aid further alleges Hewlett–Packard gained confidential information about Computer Aid, refused to work with Computer Aid in developing and marketing Galaxy, and attempted to defraud Computer Aid of the Galaxy technology.

In the spring of 1996, Anderson Kill prepared a complaint on behalf of Computer Aid against Hewlett–Packard, Sydney Fluck and a third party, AM Communications ("AM"), which was subsequently dropped from the Complaint. The complaint was filed with this court on June 5, 1996. About the time the Complaint was filed, Anderson Kill issued a five-page Press Release on its firm's letterhead discussing Computer Aid's claims against Hewlett–Packard, Sydney Fluck and AM. A few copies of the Press Release were sent out to members of the press the night before the Complaint was filed. This Press Release is now at the heart of Hewlett–Packard and Sydney Fluck' claims in the case before us.

As previously discussed, Hewlett–Packard responded to the Complaint and filed the separate action in the Northern District of California which was transferred to this Court and consolidated with the underlying action. On January 27, 1997, Sydney Fluck also filed an Answer to the Complaint and asserted its counterclaims, similar to those of Hewlett–Packard against Computer Aid and Anderson Kill. Subsequent amendments to the parties' filings address the underlying action and do not affect the Counterclaims which are presently before us.

## III. DISCUSSION

### A. Summary Judgment Standard

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 321 n. 3, 106 S.Ct. 2548 (*quoting* Fed.R.Civ.P. 56(e)); *see also First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505.

Computer Aid and Anderson Kill suggest that the summary judgment standard that Hewlett–Packard and Sydney Fluck must overcome is heightened by First Amendment, Sixth Amendment right to counsel, and Due Process concerns. Computer Aid and Anderson Kill first argue because Hewlett–Packard and Sydney Fluck are required to show actual malice, the appropriate standard of review should

be whether the evidence in the record could support a reasonable jury finding that Hewlett–Packard and Sydney Fluck have shown actual malice by "clear and convincing evidence." *Anderson*, 477 U.S. at 255–56, 106 S.Ct. 2505. *see also Tucker v. Fischbein*, 1999 WL 124355 (E.D.Pa. 1999). This is in contrast to the general review of summary judgement motions where the non-moving party must demonstrate the existence of evidence sufficient to support a jury finding in its favor. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. The standard for such a jury finding is simply "more likely than not" rather than a "clear and convincing" standard. However, we find below that Hewlett–Packard and Sydney Fluck are not required to show actual malice because neither Hewlett–Packard nor Sydney Fluck are public figures. *See, infra*, Section II. D., Actual Malice. Therefore, Hewlett–Packard and Sydney Fluck do not need to meet a heightened summary judgment standard on this basis.

Computer Aid and Anderson Kill also argue that the facts in this case are vulnerable to the chilling of discussion of litigation of public interest, therefore summary judgment is particularly appropriate. *see St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1318 (3d Cir.1994). While summary judgment may indeed be appropriate, the *St. Surin* case does not provide a basis for raising the standard Hewlett–Packard and Sydney Fluck must overcome to defeat Computer Aid and Anderson Kill's Motions for Summary Judgment.

Computer Aid and Anderson Kill further argue that the facts in this case point to the chilling of lawyers' vigorous representation of their clients for fear of being sued, citing *United States v. Hurt*, 543 F.2d 162 (D.C.Cir.1976). In the *Hurt* case, the D.C. Circuit acknowledged that when an attorney is ordered to continue to represent a client on whose behalf he has made statements and is then sued for defamation with respect to such statements, a conflict of interest exists which violates the client's sixth amendment right to effective counsel. We note that *Hurt* was a criminal case in which the defendant was appointed counsel. In the case before us, we have not ordered Anderson Kill to continue to represent Computer Aid in its civil matter.

We acknowledge that, in theory, some danger of chilling public discussion and lawyer's vigorous representation of their client exists. However, we do not believe that the facts of this case warrant deviating from the general summary judgment standard.

### B. *Choice of Law*

■ Federal district courts generally apply the choice of law rules of the state in which they are situated. *Carrick v. Zurich–American Ins. Group*, 14 F.3d 907 (3d Cir.1994). However, when a case has been transferred from a federal court for reasons other than lack of jurisdiction or venue, the transferee court generally applies the choice-of-law rules for the state in which the transferring court sits. *McFadden v. Burton*, 645 F.Supp. 457, 460 (E.D.Pa.1986) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 638–39, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). As noted, Hewlett–Packard originated its present counterclaims as the California Action, which was transferred to this court.

Computer Aid and Anderson Kill argue and Hewlett–Packard and Sydney Fluck do not challenge that upon transfer the court should apply the choice-of-law rules of the transferring state. *see Tucker Anthony, Inc. v. Bankers Trust Co.*, 1994 WL 9683 *1, *10 (S.D.N.Y.1994). We have doubts about this because Case No. 96–CV–4150 was filed in our court. Nevertheless in an abundance of caution, we will apply California's choice-of-law rules in determining which state's defamation law applies to the claims of Hewlett–Packard and Sydney Fluck.

■ California courts use a three-step "governmental interest" or "comparative impairment" choice-of-law analysis. *Arno v. Club Med. Inc.*, 22 F.3d 1464, 1467 (9th Cir.1994). The analysis is essentially (1) whether the states' respective laws actually differ, (2) if the laws actually differ, what is each state's interest in having its law applied, and (3) if each state has a legitimate interest in having its law applied, a court must compare the impairment to each state given the application of the other state's law. *Id.* at 1467. The court then should apply the law of the state who interest would be more impaired were its law not applied. *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 148 Cal.Rptr. 867, 583 P.2d 721, 726 (1978). Essentially, the applicable law of the three potential states, California, New York and Pennsylvania, is similar and yields the same result when applied to this case. However, in each area of applicable state law, a discussion of each of the three states' law is necessary to conduct the first step of the conflict-of-law analysis.

## C. *Defamation Claims*

In their respective Counterclaim Counts VIII and III, Hewlett–Packard and Sydney Fluck allege that Computer Aid and Anderson Kill's actions with respect to the issuance of the Press Release constitute defamation. Computer Aid and Anderson Kill's primary defense is that the contents of the Press Release are covered by the fair report privilege, recognized in New York, California and Pennsylvania with minor variations.

Computer Aid and Anderson Kill maintain, after an extensive discussion of the choice-of-law issue in Anderson Kill's Memorandum, that the defamation claims of Hewlett–Packard and Sydney Fluck should be governed, respectively, by New York and Pennsylvania law. Hewlett–Packard and Sydney Fluck accept Anderson Kill's analysis in making their arguments in their Opposition Briefs for Summary Judgment. We see no reason to proceed otherwise, and therefore we will primarily consider New York and Pennsylvania law in discussing Hewlett–Packard and Sydney Fluck's defamation claims. However, we will also consider the import of California law to determine whether a substantive difference would occur if California law were applied.

■ The fair report privilege in New York affords an absolute privilege to a "fair and true" report of a judicial proceeding. New York Civil Rights Law § 74. However, defamatory statements made in the absence of a judicial proceeding are not protected. *Block v. First Blood Assoc.*, 691 F.Supp. 685, 699 (S.D.N.Y.1988). Also not protected under the fair report privilege is the conduct of a person who maliciously institutes a judicial proceeding alleging false and defamatory charges then issues press releases concerning the judicial proceeding. *Williams v. Williams*, 23 N.Y.2d 592, 298 N.Y.S.2d 473, 246 N.E.2d 333, 337 (1969).

■ Hewlett–Packard and Sydney Fluck argue that a jury could conclude that the Press Release is not a "fair and true" report of the Complaint under New York law. We agree. A statement is not a "fair and true" report of a judicial proceeding under Section 74 if it creates false impression as to nature and severity of the claims against the plaintiff. *See Wenz v. Becker*, 948 F.Supp. 319, 324 (S.D.N.Y. 1996). The statement is also not a "fair and true" report where a reading of the published statement would have a different effect on the reader than reading the Complaint. *See Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 A.D.2d 434, 630 N.Y.S.2d 18, 23 (N.Y.App.Div.1995). To determine whether a report is "fair and true" a court should consider if the substance of the report is substantially correct but should not analyze the language with a "lexicographer's precision." *See Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 424 N.Y.S.2d 165, 399 N.E.2d 1185, 1187 (1979).

Anderson Kill's brief set out about 25 pages which match up the press release to the Complaint. In doing so, they decontextualize the Press Release. Read as a whole, we believe based on our reading of the Press Release itself, that a jury could reasonably find that it grossly overstates both the nature and severity of the lawsuit. For example, a jury could find that the lawsuit arose from a mere misunderstanding between a giant, Hewlett–Packard, and an uncooperative Computer Aid whose product was not particularly strategic in amount of revenue or positioning. Thus, we conclude that an outstanding issue of material fact exists with respect to whether the Press Release is a "fair and true" report, applying New York Law.

In addition, Hewlett–Packard and Sydney Fluck argue that there are outstanding issues of material fact concerning each of the caveats to the fair report privilege in New York. First, Hewlett–Packard and Sydney Fluck argue that the Press Release is not privileged because it was published before the Complaint in this legal action was filed. We agree that a jury could find that Anderson Kill jumped the gun in issuing the Press Release the evening before the Complaint was filed to certain members of the press. Second, Hewlett–Packard and Sydney Fluck argue that a jury could conclude that Anderson Kill abused any privilege that may apply to the press release by maliciously instituting a judicial proceeding alleging false and defamatory charges and then issuing the press releases in connection. The question whether the statement was made for an improper purpose is for a jury to resolve. *See Schulman v. Anderson Russell Kill & Olick, P.C.,* 117 Misc.2d 162, 458 N.Y.S.2d 448, 454 (N.Y.Sup.Ct.1982).

Finally, Hewlett–Packard and Sydney Fluck argue that a jury could conclude that the Press Release was not a report of a judicial proceeding. Hewlett–Packard and Sydney Fluck point out that the Press Release added numerous statements in addition to detailing the suit. Therefore, a jury could find that substantial parts and perhaps the entire Press Release do not constitute a report of a judicial proceeding. In all, these caveats to New York's fair report privilege raise several outstanding issues of material fact.

■ Sydney Fluck's defamation claims are arguably controlled by Pennsylvania law. In Pennsylvania, the fair report privilege is qualified. The privilege protects a declarant who accurately summarizes the gist of a court filing unless the sole purpose of the statement was to injure the claimant, even if the statement is false or inaccurate. *Sciandra v. Lynett,* 409 Pa. 595, 187 A.2d 586, 588–89 (1963). Computer Aid and Anderson Kill are entitled to the privilege if the Press Release was a "fair and accurate" report of the complaint. *Doe v. Kohn Nast & Graf, P.C.,* 866 F.Supp. 190, 194 (E.D.Pa.1994). The requirement that the Press Release be "fair and accurate" can not be established on summary judgment because of the same outstanding issues of material fact that arose under New York law.

Computer Aid and Anderson Kill further argue that Hewlett–Packard and Sydney Fluck have shown insufficient evidence for a reasonable jury to find that the sole purpose of Computer Aid and Anderson Kill's Press Release was to injure Hewlett–Packard and Sydney Fluck. Additionally, Hewlett Packard and Sydney Fluck argue the timing of the Press Release is crucial as where there is no judicial proceeding on which to report, there can be no privilege. These in addition to questions of abuse of the privilege create outstanding issues of material fact under the law of Pennsylvania which parallel those under New York law.

We briefly note that an analysis of summary judgment under California law produces essentially the same outstanding issues of material fact. In California, the Press Release must be a "fair and true" report of the judicial proceeding, as in New York. Cal.Civ.Code. § 47. Although the California law was unclear at the time

of the filing of the California Action, an amendment in 1997, passed several months after the issuance of the Press Release, clarifies the statute. This amendment parallels the New York law and applies to cases pending at the time of the enactment. *See GTE Sprint Communications Corp. v. State Bd. of Equalization,* 1 Cal. App.4th 827, 833, 2 Cal.Rptr.2d 441 (1991). For the reasons detailed above, we believe a jury could find that the Press Release was not "fair and true."

As in our discussion of New York and Pennsylvania law, Hewlett Packard and Sydney Fluck point out that the timing of the issuance of the Press Release raises an outstanding issue of material fact with respect to the applicability of the fair report privilege under California law. In sum, we believe that Hewlett–Packard and Sydney Fluck have presented sufficient evidence to defeat Computer Aid and Anderson Kill's Motions for Summary Judgment on the factual issue of whether the Press Release is a "fair and true" report under New York or California law or a "fair and accurate" report under Pennsylvania law. There are also other outstanding issues of material fact regardless of which state's substantive defamation law is used. Therefore, we will deny Computer Aid and Anderson Kill's summary judgment motions on the defamation issue in Sydney Fluck's Counterclaim II and Hewlett–Packard's Counterclaim V, which is labeled as "trade libel".

### D. *Actual Malice*

■ Computer Aid and Anderson Kill also argue that Hewlett–Packard and Sydney Fluck must show that Anderson Kill and Computer Aid acted with actual malice to succeed on their defamation and injurious falsehood claims because Hewlett–Packard and Sydney Fluck are public figures. In *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 153–55, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Supreme Court held that a "public figure" has the burden of proving "actual malice" to prevail on a defamation claim. So, we must first ascertain whether Hewlett–Packard and Sydney Fluck are public figures. *Marcone v. Penthouse Int'l Magazine for Men,* 754 F.2d 1072 (1985)

■ In *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court identified two classes of public figures. An individual may have such "pervasive fame or notoriety" so that he is a public figure for "all purposes and in all contexts," a general purpose public figure. *Gertz,* 418 U.S. at 345, 94 S.Ct. 2997. Or, more commonly, an individual "voluntarily thrusts himself into" a particular public controversy and thereby becomes a public figure with respect to the limited range of issues surrounding the controversy, a limited purpose public figure. *Id.*

■ We accept Computer Aid and Anderson Kill's proposition that corporations may be public figures. However, we do not believe that Hewlett–Packard has such pervasive fame or notoriety to be deemed a general purpose public figure. Computer Aid and Anderson Kill discuss *Reliance Insurance Co. v. Barron's,* 442 F.Supp. 1341 (S.D.N.Y.1977), to support their contention that Hewlett–Packard should be considered to be a general purpose public figure because it is one of the largest and most influential corporations in the world with one of the most actively traded stocks on the New York Stock Exchange. In the *Reliance Insurance* case, Reliance Insurance was a large corporation with more than one billion dollars in assets and its stock was publicly traded. *Reliance Insurance,* 442 F.Supp. at 1348. However, contrary to what Computer Aid and Anderson Kill assert, the court in *Reliance Insurance* did not conclude from these two facts alone that Reliance was a public figure generally.

In fact, the court in *Reliance Insurance* never came to the conclusion that Reliance was a general purpose public figure. The court found instead that Reliance was a

**536**

limited purpose public figure. The basis of the court's finding was that Reliance apparently had piqued the public interest and was in the process of making a public stock offering. *Id.* The court found that in offering stock to the public, Reliance "voluntarily thrust itself" into the public arena with respect to issues surrounding the stock sale. *Id.* Similarly, all of the other cases that Hewlett–Packard and Sydney Fluck cite in support of its contention that Hewlett–Packard is a general purpose public figure actually involve parties who are found to be limited purpose public figures.

■ Alternatively, Computer Aid and Anderson Kill argue that Hewlett–Packard is a limited purpose public figure. But, we fail to see the public question or controversy into which Hewlett–Packard has injected itself or been drawn. Computer Aid and Anderson Kill allege that Hewlett–Packard issued the nationwide press release regarding the acquisition of CaLan, beginning Computer Aid's conflict with Hewlett–Packard. However, this press release mentions neither Galaxy, nor Computer Aid, nor the Agreement between CaLan and Computer Aid. *see* Dfs' Ex. 23, Dep. Ex. P421–22. Computer Aid and Anderson Kill also allege that Hewlett–Packard issued widely distributed press releases announcing its intent to develop a network monitoring system similar to Galaxy. Computer Aid and Anderson Kill put forth the deposition of one Cheri Tamo and the numerous exhibits to her deposition as evidence for this proposition. *see* Dfs' Ex. 24. However, these items, though numerous, do not support Computer Aid and Anderson Kill's proposition outright. Computer Aid and Anderson Kill have failed to develop the evidence in a cogent manner so that we may make some connection between it and Computer Aid and Anderson Kill's proposition that Hewlett–Packard thrust itself into a matter of public concern.

Simply put, we fail to see Hewlett–Packard voluntarily thrusting itself into a public controversy and we fail to even see the public controversy in Hewlett–Packard's acquisition of CaLan. We do not mean to imply that all acquisitions are not public controversies. For example, the merger of two competitors in a market with a few market-dominating firms such as the oil or automotive industries would likely be a public controversy. And such a business combination would invoke not only antitrust concerns but also other questions and concerns of crucial importance to the general public. But here, CaLan was a private, small company which was acquired by Hewlett–Packard, as an expansion of their present business lines.

We suspect that Computer Aid and Anderson Kill are fundamentally arguing that Hewlett–Packard's stature and access to channels of communication allow it to make an effective response in the public forum to counteract allegedly defamatory statements. It is this remedy of self-help that the Supreme Court in *Gertz* used a basis to distinguish the public figure from a private individual, who is more vulnerable to injury. *Gertz,* 418 U.S. at 344, 94 S.Ct. 2997. However, as the Third Circuit pointed out in *Steaks Unlimited v. Deaner,* 623 F.2d 264, 273 (3d Cir.1980), this is merely one of the considerations of whether a particular plaintiff is a public figure. A more important factor is whether a plaintiff, by injecting itself into the public arena and engaging the public's attention, has effectively assumed the risk of potentially unfair criticism. *Steaks Unlimited,* 623 F.2d at 273. Computer Aid and Anderson Kill point out that Hewlett–Packard issued a press release concerning the lawsuit filed by Computer Aid and Anderson Kill and made public the Counterclaims against Computer Aid and Anderson Kill presently before us. We fail to see how this "public" response to Computer Aid and Anderson Kill's litigation, absent other factors, either thrusts Hewlett–Packard into a public controversy or requires that Hewlett–Packard assume the risk of unfair criticism. We therefore

hold that Hewlett–Packard is neither a general purpose public figure nor a limited purpose public figure.

 Computer Aid and Anderson Kill assert that Sydney Fluck is a limited purpose public figure because of his conduct leading up to and during the acquisition of CaLan by Hewlett–Packard. We do not question Computer Aid and Anderson Kill's evidence that tends to show that Sydney Fluck participated fully in Hewlett–Packard's acquisition of CaLan as the President, Chief Executive Officer and the Chairman of the Board of Directors of CaLan. However, Computer Aid and Anderson Kill's proposition that a principal in a publicity effort is necessarily a limited purpose public figure with respect to the subject matter of the publicity is legally unsupported.

The two cases cited by Computer Aid and Anderson Kill, *Steaks Unlimited* and *City of Rome v. Glanton*, 958 F.Supp. 1026 (E.D.Pa.1997) are factually different from the case presently before us. In *Steaks Unlimited*, the plaintiff had engaged in heavy advertising over the radio, using large signs and handbills, and through local paper attempting to induce consumers to purchase their steaks. In that case, the Third Circuit found that the plaintiff, through its advertising blitz invited public attention, comment and criticism. *Steaks Unlimited*, 623 F.2d at 274. There is evidence that Hewlett–Packard made several press releases regarding the transaction and circulated various informational material to its staff and customers. However, we believe that Hewlett–Packard and Sydney Fluck did not so highly publicized Hewlett–Packard's acquisition of CaLan that either become public figures as a result. Had Hewlett–Packard and Sydney Fluck gone on an extensive media or advertising campaign to promote the transaction to entice investors and customers, respectively, to purchase their securities or products, we might think otherwise.

In the *Glanton* case, the court found that Richard Glanton was a limited pur-pose public figure in his role as President of the Barnes Foundation with respect to the "well-known and widely celebrated tour" of the Foundation's art collection. *Glanton*, 958 F.Supp. at 1041. The art collection, containing masterpieces from artists such as Cezanne and Matisse, had not previously traveled outside of the Foundation but was toured between 1993–1995 to raise funds to renovate the Foundation's campus. *Glanton*, 958 F.Supp. at 1030. We do not believe that Hewlett–Packard's acquisition of CaLan is on the same order of magnitude in the public's eye as the tour of a world-class art exhibition. Accordingly, we find that Sydney Fluck falls short of being a limited purpose public figure.

We find that Hewlett–Packard and Sydney Fluck are neither public figures nor limited purpose public figures given the facts of this case. Therefore, we will not address whether Hewlett–Packard and Sydney Fluck have or must established that a reasonable jury could find by "clear and convincing" evidence that Computer Aid and Anderson Kill acted with "actual malice" in issuing the Press Release.

## E. *Vicarious Liability*

 In its Motion for Partial Summary Judgment, Computer Aid notes that neither Hewlett–Packard nor Sydney Fluck has made a claim against it based on a theory of vicarious liability. Computer Aid points out that Hewlett Packard and Sydney Fluck's claims against it are based on Computer Aid's *own* actions in allegedly approving, permitting and encouraging the allegedly defamatory statement contained in the Press Release. *Id.* Hewlett–Packard and Sydney Fluck argue that Computer Aid should be held vicariously liable, under the principles of agency law applied to the attorney-client relationship between Anderson Kill and Computer Aid, for any statements made by Anderson Kill in the Press Release which are found to be defamatory. In its Reply Brief, Computer Aid asserts that Hewlett–Packard and

Sydney Fluck have gone beyond the scope of their pleadings by making a claim of vicarious liability at this late stage. Computer Aid argues that summary judgment is appropriate on this issue and cites *Schaffer v. A.O. Smith Harvestore Products, Inc.*, 74 F.3d 722 (6th Cir.1996). The Sixth Circuit in *Schaffer* held that summary judgment was appropriate against plaintiffs who never alleged vicarious liability in their complaint. *Schaffer*, 74 F.3d at 731. Similarly, in this case, Hewlett–Packard and Sydney Fluck had not plead the vicarious liability claim prior to Computer Aid and Anderson Kill's Motions for Summary Judgment. Accordingly, we will grant summary judgment for Computer Aid against the Hewlett–Packard and Sydney Fluck on the issue of Computer Aid's vicarious liability for Anderson Kill's allegedly defamatory statements in the Press Release.

■ The *Schaffer* court also noted that the plaintiffs in that case failed to meet their burden of overcoming the presumption that defendant corporation and its subsidiary are separate corporations. *Id.* Similarly, here, Computer Aid points out that Hewlett–Packard and Sydney Fluck have not shown that the facts in this case necessitate that Computer Aid be necessarily vicarious liable for the actions of Anderson Kill with respect to the Press Release. The case law in this area recognizes the latitude that attorneys have in discharging their duties to their clients. In *Green Acres Trust v. London*, 142 Ariz. 12, 688 P.2d 658 (1984), a case strikingly similar to the case before us, defendants in a class action suit brought a defamation action against the plaintiffs and the plaintiffs' attorneys based on statements published in a newspaper article. The Arizona Supreme Court held that the agent-principal relationship existed between attorney and client but that clients were not vicariously liable for their attorney's defamatory statements since there was no evidence that the clients gave actual or apparent authority to issue those statement or rati-

fied them. Computer Aid and Anderson Kill offer several pertinent cases from diverse jurisdictions which also hold that a client is not subject to vicarious liability for torts committed by its attorney unless the client authorized or ratified the commission of the tort. *See American Telephone and Telegraph Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1436 (3d Cir.1994). *See also Williams v. Burns*, 463 F.Supp. 1278, 1285 (D.Colo.1979); *Palmer v. Ted Stevens Honda, Inc.*, 193 Cal.App.3d 530, 238 Cal.Rptr. 363 (1987); and *Demopolis v. Peoples Nat'l Bank of Washington*, 59 Wash.App. 105, 118, 796 P.2d 426 (1990).

In an attempt perhaps to distinguish this line of cases, Hewlett–Packard and Sydney Fluck allege that Computer Aid played an active, approving role in Anderson Kill's Press Release. However, Hewlett–Packard and Sydney Fluck offer no evidence upon which a jury could reasonably find that Computer Aid gave authorized the material in the Press Release or ratified such material. In fact, the evidence that Hewlett–Packard and Sydney Fluck brings before us tends to show more that Anderson Kill (1) disregarded its clients wishes in making a Press Release and (2) further disregarded substantive comments made by its client in the drafting of the Press Release.

Mr. Jay Spivak, an attorney at Anderson Kill, testified that he believed that Mr. Tony Salvaggio of Computer Aid did approve of the press release. Pls' Ex. 15, Spievack Dep. p. 133. Mr. Salvaggio, President of Computer Aid, offered testimony at his deposition which overwhelms Mr. Spivak's "belief." Mr. Salvaggio, upon being presented with a draft copy of the Press Release marked with his own comments, offered no support for Plaintiff's position at his deposition. Mr. Salvaggio acknowledged that he "okayed" a press release after significant discussion with Anderson Kill, although he was reluctant about it as Computer Aid usually did not issue press releases. Pls' Ex. 14, Salvag-

gio Dep. p. 181. Regarding the actual draft, Mr. Salvaggio pointed out that he had written comments including objections to certain items in a number of places that he felt were inaccurate. In the actual Press Release, the language was changed but the import remained the same. For example, Mr. Salvaggio's concern regarding the statement that Hewlett–Packard purchased CaLan largely because of the Galaxy project was addressed by a change in the language but not in meaning for the actual Press Release. *See Id. See also* Pls.' Ex. 2. Another example is Mr. Salvaggio's comment about the beta test language on the Press Release draft. He testified at his deposition that he did not feel that the Galaxy project was at that point in its development. *See* Pl's Ex. 14, Salvaggio Dep. p. 181. In the actual Press Release, there is no language about a beta test, however it mentions launching live testing, a definition of beta test. *See* Pls' Ex. 2. That is, the meaning remained the same. These discrepancies between what Computer Aid intended, through Mr. Salvaggio, and the actual Press Release issued by Anderson Kill tends to disprove that Computer Aid authorized or ratified the actual Press Release. Therefore, even if we had found Hewlett–Packard and Sydney Fluck's claims of vicarious liability to be timely plead, we probably would have granted summary judgment on the basis of the evidence presented by Hewlett–Packard and Sydney Fluck.

Computer Aid and Anderson Kill also cite two other cases for the proposition that Attorneys are independent contractors and not employees. One case, on its facts, only exculpates Computer Aid for Anderson Kill's smallest actions, e.g. incurring photocopying costs. See *McCarthy v. Recordex Service, Inc.,* 80 F.3d 842, 852 (3d Cir.1996). The other case exculpates a client for its attorney's negligent conduct but we should note that defamation, the tort complained of here, defamation, is an intentional tort. See *Ingersoll–Rand Equipment Corp. v. Transportation Ins. Co.,* 963 F.Supp. 452, 455 (M.D.Pa.1997).

## F. *Injurious Falsehood*

 Hewlett–Packard and Sydney Fluck have asserted claims against Computer Aid for the tort of "injurious falsehood." This tort is also known as "trade libel." *See Triester v. 191 Tenants Association,* 272 Pa.Super. 271, 277, 415 A.2d 698 (1979); *Waste Distillation Technology, Inc. v. Blasland & Bouck Engineers, P.C.,* 136 A.D.2d 633, 634, 523 N.Y.S.2d 875 (1988); *Guess, Inc. v. Jeff Hamilton, Inc.,* 176 Cal.App.3d 473, 222 Cal.Rptr. 79 (1986). Essentially, Hewlett–Packard and Sydney Fluck must produce some evidence of special damages caused by the Press Release to survive summary judgment on their injurious falsehood claims. Hewlett–Packard and Sydney Fluck argue that their injurious falsehood claims should be analyzed in the same manner as their defamation claims. However, the law of Pennsylvania, New York and California each requires proof of special damages in the form of actual economic harm to a plaintiff's business caused by the alleged "injurious falsehoods." Pennsylvania requires that at a minimum, Hewlett–Packard must demonstrate the amount of product revenue which it lost as a result of the statements in question. *KBT Corp. v. Ceridian Corp.,* 966 F.Supp. 369, 375 (E.D.Pa.1997). In New York, Special damages may be proven by identifying customers who ceased doing business with Hewlett–Packard as a result of the allegedly defamatory statements. *Drug Research Corp. v. Curtis Publishing Co.,* 7 N.Y.2d 435, 440–441, 199 N.Y.S.2d 33, 166 N.E.2d 319 (1960). Furthermore, Hewlett–Packard must prove by something more than a mere guess why such business was lost. *KBT Corp.,* 966 F.Supp. at 369 & 375.

 As Computer Aid and Anderson Kill point out, Hewlett–Packard has not provided any evidence that customers refused to deal with it or that Hewlett–Packard lost any business at all as a result of the alleged defamatory statements con-

tained in the Press Release. The strongest support that we could find for the proposition that Hewlett–Packard or Sydney Fluck suffered damages is the Expert Report and Deposition of Robert Comment, which is actually among Computer Aid and Anderson Kill's exhibits.

At best, this "expert report" points out that Hewlett–Packard suffered a temporary dip in its stock price between June 5 and 6, 1996. Mr. Comment's report is perhaps intentionally simplistic because of the potential limitations on judicial expertise in the world of high finance. We are sensitive to our role as a "gate keeper" in dealing with experts. The report is based on an "event study" conducted by Mr. Comment of Hewlett–Packard's stock price reacting to the press release. Although Mr. Comment may have actually conducted such an event study properly, we find it lacking in certain important statistical details, even accepting such bases as an efficient capital market and liquidity of Hewlett–Packard's securities.

The expert report notes that the overall market, as represented by the S & P 500, rose by .87%, while Hewlett–Packard's stock price fell by 1.97% between June 5 and June 6's closing price. Therefore, the report concludes that the market-adjusted percentage change in Hewlett–Packard's stock-price is –2.84%.[1] This assumes that Hewlett–Packard is essentially tied perfectly to or "moves with" the market, which may not be the case.

We are not at all convinced that Mr. Comment's observation of short term fluctuations in stock price reflects damage to the health of the company. Between June 5 and 6 in 1996, the same day as Hewlett–Packard's stock drop, Hewlett–Packard's quite able and large competitor, IBM, fell from a 104 ⅞ closing price on June 5 to a 101 ¼ closing price on June 6, a precipitous drop of –3.46%.[2] Unsystematic risk in the computer industry and investor sentiment may have affected that sector more tangibly than the Press Release. Mr. Comment tends to focus on stock price changes, not the statistical and qualitative significance of those changes.

Needless to say, were we to accept Mr. Comment's "expert report" as true, we would still find that the evidence does not provide the kind of direct evidence required on summary judgment to raise an issue of material fact on the issue of special damages. As Mr. Comment's report is dubious, we are further confident that this scant evidence that Hewlett–Packard and Sydney Fluck enjoy is insufficient to defeat Computer Aid and Anderson Kill' Motions for Summary Judgment on the issue of special damages necessary to maintain their injurious falsehood claims and, as discussed below, their common law unfair competition claims.

## G. Unfair Competition

Hewlett–Packard's Counts VI and VII claim that Computer Aid engaged in common law and statutory unfair competition. In Pennsylvania and New York, the common law tort of unfair competition consists of the misappropriation of the skill, expenditures and labor of another. *Pennsylvania State University v. University Orthopedics, Ltd.*, 706 A.2d 863, 871 (Pa.Super.1998). *Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc.*, 795 F.Supp. 639, 656 (S.D.N.Y.1992). A commentator has noted that common law unfair competition presently describes a general category of new torts that attempt to protect commercial value. *See* W. Page Keeton et al., Prosser and Keeton on the

---

1. –2.84% = –1.97%–.87%. Percentages should not be added. Nevertheless, because of the small percentage figures involved, the figure put forth does not deviate much from the true percentage drop. The true percentage drop appears to be –2.82% = 1 – (100–1.97)/(100 + .87).

2. –3.46% = (101 ¼ – 104 ⅞)/(104 ⅞). Stock Price Information taken from "Historical Stock Quotes" on the "Quotes" database on Westlaw.

Law of Torts § 130 at 1015 & n. 2 (5th ed.1984).

In both Pennsylvania and New York, unfair competition claims most similar to those of Hewlett–Packard require proof of direct financial loss, lost dealings, or an accounting of the profits of such unfair competition. *Cubby v. Compuserve, Inc.*, 776 F.Supp. 135, 142 (S.D.N.Y.1991). *Waste Distillation Technology, Inc. v. Blasland & Bouck Engineers, P.C.*, 136 A.D.2d 633, 523 N.Y.S.2d 875, 877 (N.Y.App.Div.1988). *University Orthopedics*, 706 A.2d at 871. Fundamentally, some proof of special damages is required to be presented for Hewlett–Packard to defeat Computer Aid's Motion for Summary Judgment. As we noted above in our discussion on special damages regarding Hewlett–Packard and Sydney Fluck's injurious falsehood claims in G., above, Hewlett–Packard and Sydney Fluck·have presented insufficient evidence that they suffered special damages. Accordingly, we will grant Computer Aid's motion for summary judgment on Hewlett–Packard's common law unfair competition claim.

Because we find that Hewlett–Packard has failed to make the requisite showing of special damages, we need not address whether the common law tort of unfair competition requires that the parties be competitors for Hewlett–Packard to maintain its claim against Computer Aid. The case law of New York and Pennsylvania on unfair competition is quite complex and appears to be factually intensive as the tort of unfair competition covers a variety of circumstances in which property rights of commercial value are threatened.

In California, the tort of unfair competition is codified in the California Unfair Competition Act ("UCA"). The UCA supersedes the common law tort of unfair competition and is also aimed at preventing anti-competitive business practices and protecting the public from fraud. *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 209,

197 Cal.Rptr. 783, 673 P.2d 660 (1983). However, the UCA covers a broader range of activity, prohibiting "unlawful, unfair or fraudulent business act or practice." Cal. Bus. and Prof.Code § 17200.

Computer Aid's most convincing argument for granting summary judgment on Hewlett–Packard's statutory unfair competition claim is that the UCA does not provide a private cause of action for damages. Computer Aid cites *State Farm Fire and Casualty Co. v. Allegro*, 45 Cal.App.4th 1093, 53 Cal.Rptr.2d 229 (1996), *abrogated on different grounds, Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 564, 973 P.2d 527 (1999). The court in *Allegro* held that compensatory and punitive damages were unavailable under the UCA. *Allegro*, 53 Cal.Rptr.2d at 238–39. Instead, the UCA affords injunctive relief and requires the disgorgement of profit obtained by unfair competition. *Id.* Hewlett–Packard is not requesting injunctive relief and Computer Aid has enjoyed no profit at all, assuming arguendo that it actually engaged in unfair competition. Therefore, we hold that Computer Aid is entitled to summary judgment on Hewlett–Packard's unfair competition claims. An appropriate order follows.

### ORDER

AND NOW, this 15th day of June, 1999, in consideration of the Motion for Summary Judgment of Counterclaim Defendant Anderson Kill & Olick, P.C. and Memorandum with Exhibits filed on March 4, 1999, the Motion of Counterclaim Defendants Computer Aid, Inc. and Computer Aid, Inc., Trading and d/b/a New Century Communications, ("Computer Aid") for Partial Summary Judgment and Brief filed on March 19, 1999, the Opposition of Hewlett–Packard Company and Sydney Sydney Fluck to Computer Aid's Motion for Summary Judgment and Opposition of Hewlett–Packard Company and Sydney Fluck to Anderson Kill & Olick's

Motion for Summary Judgment with Exhibits filed on April 20, 1999, the Reply Memorandum of Law of Counterclaim Defendant Anderson Kill & Olick, P.C. in Support of Motion for Summary Judgment filed on April 30, 1999, and the Reply Brief of Counterclaim Defendants Computer Aid, in Support of Motion for Partial Summary Judgment filed on April 30, 1999, it is hereby ORDERED, consistent with the foregoing Memorandum as follows:

1. The Motion for Summary Judgment of Counterclaim Defendant Anderson Kill & Olick, P.C. is GRANTED with respect to Hewlett–Packard Company's Counterclaim Count VIII and Sydney Fluck's Counterclaim Count III.

2. The Motion for Partial Summary Judgment of Counterclaim Defendant Computer Aid is GRANTED with respect to Hewlett–Packard Company's Counterclaim Counts VI–VIII and Sydney Fluck's Counterclaim Count III.

3. We also GRANT summary judgment for Counterclaim Defendant Computer Aid on the issue of Counterclaim Defendant Computer Aid's vicarious liability for any defamatory statement made by Anderson Kill & Olick, P.C. in the June 5, 1996 press release.

4. Hewlett Packard has conceded that its interference with contract claim against Counterclaim Defendant Computer Aid in Count IX of Hewlett–Packard's counterclaims has no validity, therefore this claim is DISMISSED with prejudice.

5. The Motions of Counterclaim Defendants Anderson Kill & Olick, P.C. and Computer Aid are DENIED in all other respects.